[Buckalew, Admr. v. Tennessee Coal, Iron and R. R. Co.]

# Buckalew, Admr. v. Tennessee Coal, Iron and Railroad Company.

### Action by Administrator of Convict for Damages for Alleged Negligent Killing of Intestate.

1. *Action by administrator for alleged negligent killing of his intestate; when an action of trespass.*—Where in an action brought by an administrator, under section 2589 of the Code, to recover damages for the alleged negligent killing of his intestate, a count of the complaint alleges that the death of the plaintiff's intestate was caused by reason of the defendant's compelling him to be in a mine—there being no allegation of facts showing that the compulsion was lawful—states an action of trespass and is not demurrable; and allegations of special injury caused by defendant's negligence while the plaintiff's intestate was under such compulsion, do not change the character of the action, nor is the count affected by the fact that the intestate was described therein as a convict.

2. *Same; when an action on the case.*—In an action by an administrator to recover damages for the negligent or wrongful killing of his intestate, a count of the complaint which alleges that his intestate while being lawfully worked in a mine, as a convict under hire from the proper authorities, was killed by reason of the incompetency or carelessness of a person under whose superintendence he worked, which person was unfit to have such superintendence entrusted to him; or a count which alleges that his death was caused as the result of specified acts of negligence of which said superintendent was guilty; or a count which alleges that his death was the result of some reckless, wanton or intentional act done or allowed to be done by said superintendent, as such, states an action on the case and is sufficient.

3. *Same; joinder of action of trespass and action on the case.*—Where a personal representative brings an action to recover damages for the death of his intestate under section 2589 of the Code, causes of action, which decedent, had he survived, would have had to declare on in trespass, can be joined with causes of action, which decedent, if he had survived the injury, would have been obliged to declare on in case.

4. *Master and servant; relation does not exist between convict and hirer.*—The relation of master and servant does not exist between a convict and one who contracts with the proper authorities for the hire of such convict, the convict being a mere prisoner in the custody of the contractor as his keeper; and hence a convict is not a fellow serv-

[Buckalew, Admr. v. Tennessee Coal, Iron and R. R. Co.]

ant of the employés of the contractor with whom he works in a common employment, nor of fellow convicts engaged in the same work.

5. *Same; liability of hirer of convicts for injuries to convicts received while at convict labor.*—The hirer of a convict owes him the duty of doing him no willful harm, and of exercising reasonable care for his personal safety; but the right of action which the convict has for injuries received while engaged in work for the hirer is not dependent upon the rules governing the liability of employer to employé.

6. *Action for damages for death by wrongful act; statute of limitations.* By the provisions of the statute (Code, § 2589) an action by the personal representative for the death of his intestate by the wrongful act or omission of another, is barred if not brought within two years from and after the death of the testator or intestate.

7. *Same; inadmissible evidence.*—Where, in an action by the personal representative to recover damages for the death of his intestate, caused by the wrongful act of the defendant, it was undisputed that the plaintiff's intestate was killed by the falling of the roof in defendant's mine, where the decedent was at work, and the only question is whether the defendant was guilty of negligence with reference thereto, evidence as to the condition of the body of the deceased after the accident, or as to whether it was buried by the defendant, is immaterial and properly excluded.

8. *Right of recovery in such case; evidence.*—In such an action, if plaintiff's intestate was killed by the negligence of a superintendent of the work in which the intestate was engaged, the plaintiff is entitled to recover; but evidence of the fitness or competency of such superintendent is admissible only for the purpose of shedding light upon the negligence *vel non* of such superintendent, or in the assessment of damages.

9. *Same; when opinion evidence admissible.*—In an action by an administrator to recover damages for death of his intestate which was alleged to have been caused by the negligence of defendant's superintendent who was in charge of the work in which the decedent was engaged at the time of the injury, where a witness testified that he had been engaged in the work in which plaintiff's intestate was killed, for two and a half years, that he was familiar with the work in which he was engaged when killed and in which defendant's superintendent was engaged, that he had known the superintendent four and a half years, and had seen his work often, and knew what the duties of such superintendent were, a proper predicate is laid for a question to such witness as to whether or not such superintendent was a competent man to be intrusted with such superintendence, and it is error for the court not to allow such question to be asked.

10. *Same; irrelevancy; error not presumed.*—In an action by an administrator to recover damages for the death of his intestate, which was alleged to have been caused by the negligence of defendant's superintendent, who was in charge of the work in which the decedent was engaged at the time of the injury, although the evidence showed

that said superintendent, who was a convict, had been punished several times by defendant for causes connected with his duties, testimony as to whether he had been punished for breaking the leg of a convict other than deceased is incompetent for not showing its connection with his duties as superintendent of deceased; and as error will not be presumed, it is not competent to ask whether such superintendent was retained after such punishment, unless the question is limited to a time prior to the injury complained of.

· 11. *Same; only punitive damages recoverable; evidence of pecuniary loss inadmissible.*—In an action brought by the personal representative under section 2589 of the Code, to recover damages for a wrongful act or omission resulting in the death of his decedent, the damages recoverable are entirely punitive, and evidence tending to show actual, pecuniary loss by reason of the death of intestate, is irrelevant and inadmissible.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This action was brought on June 18, 1895, by the appellant, Louella Buckalew, as administratrix of the estate of William H. Buckalew, deceased, against the appellee, the Tennessee Coal, Iron & Railroad Company.

The complaint contained six counts, which were as follows: 1st. "The plaintiff claims of the defendant twenty thousand dollars as damages for that heretofore, on, to-wit, 16th day of November, 1893, defendant was running and operating a certain coal mine known as Shaft Number One, at or near Pratt City, in Jefferson county, Alabama; and in or about the running thereof compelled plantiff's intestate, who was a convict, to be in said mine; that the roof of said mine over the place where plaintiff's intestate was compelled to be as aforesaid, defendant negligently caused or allowed to be or remain insecure and liable to fall, and by reason thereof said roof, or a part thereof, did fall and crush to death plaintiff's said intestate." In each of the other counts the first clause as to the running and operating of a coal mine by defendant is the same. The other allegations of each of the remaining counts as to the injury and the alleged negligence causing it, were as follows:

2d count. "And in or about the running and operation thereof compelled plaintiff's intestate, who was a convict, to be in said mine; that while plaintiff's intestate, was in said mine as aforesaid, defendant, through its agent, to-wit, one George Miller, negligently caused a

part of the roof of said mine, at the place where the plaintiff's said intestate was, to fall upon him and crush him so that he died by reason thereof."

3d. count. "And in or about the running and operating of said mine compelled plaintiff's said intestate, who was a convict, to be in said mine; and while plaintiff's said intestate was in said mine as aforesaid, defendant, through its agent, to-wit, one George Miller, recklessly and wantonly or intentionally caused a part of the roof of said mine at the place where plaintiff's said intestate was, to fall upon him and crush him so that he died by reason thereof."

4th. count. "That on said day plaintiff's intestate was a convict for a short term, and had been leased or let by the proper authorities to defendant, and on said day was being worked as such convict by defendant in said mine under the superintendence of one Gerge Miller; that George Miller was an unfit person in whom to trust such superintendence, in that he was incompetent or careless, and defendant was negligent in trusting said Miller with superintendence as aforesaid; and in consequence thereof said Miller caused a part of the roof of said mine to fall upon plaintiff's said intestate and crush him so that he died by reason thereof."

5th count. "That on said day plaintiff's intestate was a convict for a short term, and had been leased or let by the proper authorities to defendant, and on said day was being worked as such convict by defendant in said mine under the superintendence of one Geogre Miller; that said George Miller was intrusted by defendant with superintendence, and in the exercise of such superintendence he, said George Miller, negligently caused or allowed a part of the roof of said mine to fall upon plaintiff's said intestate and crush him so that he died by reason thereof."

6th. count. "That on said day plaintiff's intestate was a convict for a short term, and had been leased or let by the proper authorities to defendant, and on said day was being worked as such convict by defendant in said mine under the superintendence of one George Miller; that said George Miller was intrusted by defendan-with superintendence, and in the exercise of such superintendence he, said George Miller, recklessly and wantonly or intentionally caused or allowed a part of the roof

to fall upon plaintiff's said intestate and crush him so that he died by reason thereof.''

The defendant demurred to the first count upon the following grounds : "1. It is not shown how the defendant compelled the intestate to be in its said mine. 2. The relationship between the intestate and defendant at the time of intestate's death is not sufficiently shown. 3. The facts constituting the alleged negligence of the defendant in causing or allowing the roof to be or remain insecure and liable to fall are not sufficiently averred.''

To the second count the defendant demurred upon the first and second grounds interposed to the first count, and the following additional grounds : "3. Said count fails to show that the defendant would be liable to plaintiff's intestate for the negligence of its agent, George Miller. 4. Said count fails to show in what the alleged negligence of said George Miller consisted.''

To the third count the defendant demurred, in addition to the first and second grounds, which were interposed to the first count, upon the following grounds : "3. There are no facts averred which show that the said George Miller in recklessly, wantonly or intentionally causing said roof to fall, acted within the scope of his authority as defendant's agent so as to bind defendant therefor. 4. Said count fails to show that defendant was liable for the reckless, wanton or intentional act of its agent, George Miller.''

To the fourth, fifth and sixth counts, the defendant demurred upon the following ground : 1. "Said counts fail to aver what the terms of said lease were, or what duties it imposed on defendant with reference to the care of the convicts leased under it.'' To the fourth count the defendant also demurred upon the following grounds : 2. "Said count fails to show that the defendant under said lease owed the intestate the duty of exercising proper diligence in providing a fit and careful superintendent.'' 3. "Said count fails to show that said Miller negligently or wrongfully caused a part of said roof to fall on plaintiff's intestate.''

To the fifth count there was also interposed the following grounds of demurrer : 2. "Said count fails to show that the defendant under said lease owed the intestate any duty of exercising care in regard to the condition of its roof in its said mine.'' 3. "Said count fails to

show that the defendant was responsible to the intestate for the negligence of its superintendent, George Miller."

There was also interposed the following grounds of demurrer to the sixth count: 2. "Said count fails to show that the defendant under said lease owed the intestate any duty of exercising care in regard to the condition of its roof in said mine." 3. "Said count fails to show that the defendant was responsible to intestate for the reckless, wanton or intentional act of its superintendent, George Miller, in causing or allowing a part of said roof to fall on intestate."

The defendant then demurred to the complaint as a whole, and to each count thereof, separately and severally, upon the following grounds: 1. "It appears from the allegations of said complaint that, had the intestate lived, he could not have maintained an action for the wrongful act, omission or negligence which it is alleged caused his death, if it had not caused death, because at the time of his injury he was a convict and civilly dead, and could not maintain an action against defendant therefor." 2. "Misjoinder of counts, in this, that the first, second third and fourth counts are framed under the common law liability of defendant, and section 2589 of the Code of 1886, and the fifth and sixth are framed under the employés' act, section 2590 of the Code of 1886." 3. "Because it appears from said counts that the injury and death of plaintiff's intestate was caused by the negligence of a fellow servant of plaintiff's intestate, and it is not alleged that defendant was negligent in the employment or retention of said fellow servant, nor are such facts alleged as to bring said case within the purview of section 2590 of the Code."

The demurrers to the second and third counts of the complaint were sustained, and to the other counts were overruled. To each of the latter rulings the defendant separately excepted. The defendant then interposed the following pleas: The first was a plea of not guilty. The second, third, fourth and fifth set up, respectively, that the cause of action stated in the first, fourth fifth and sixth counts, respectively, was barred by the statute of limitations of one year. The sixth and seventh pleas were as follows: "6. For further answer to the first count of plaintiff's complaint, defendant says that plaintiff's intestate was a convict leased to the defendant

by the State of Alabama, and that his injury and death were caused by the negligence of a fellow servant for whose negligence defendant was not responsible under section 2590 of the Code, nor was defendant guilty of negligence in the employment or retention of said fellow servant in the position occupied by him." "7. For answer to the first, fourth and fifth counts of plaintiff's complaint defendant says that plaintiff's intestate was guilty of negligence which proximately contributed to cause the injury complained of." The plaintiff demurred to the 2d, 3d, 4th and 5th pleas upon the ground, that it appears from the complaint that the cause of action was not barred by the statute of limitations of one year. To the 6th plea the plaintiff demurred on the ground, that it appears from the plea that the plaintiff's intestate was a convict, and was not capable of contracting for himself or exercising his own will in choosing his place of work or in the selection of his masters. The demurrers to the 2 and 3 pleas were sustained. To the 4 and 5 pleas they were overruled.

Upon the trial of the cause it was admitted by both the parties to the suit, "That the plaintiff's intestate, William H. Buckalew, was a convict, sentenced by the criminal court of Jefferson county, Alabama, for a short term, viz., two years; that said Buckalew was leased or let to the defendant by the proper authorities of said county; that he was put to work in their coal mines at Pratt City, Alabama, as such leased convict, and instantly killed by a fall of slate or stone from the roof of said coal mine, while there as such leased convict under the control and dominion of defendant."

Upon the examination of one B. F. Montgomery, as a witness for the plaintiff, and after he had testified that he went to Pratt Mines for the body of plaintiff's intestate, the plaintiff asked the witness: "In what condition he found the body of deceased?" The defendant objected to this question, on the ground that it called for immaterial and irrelevant evidence. The court sustained the objection, and the plaintiff duly excepted.

J. B. McMahan, as a witness for the plaintiff, testified that he went with the plaintiff to Pratt City for the body of plaintiff's intestate. This witness was then asked the following questions: "If deceased had been buried at the time of his arrival at Pratt City?" "If defendant's

[Buckalew, Admr. v. Tennessee Coal, Iron and R. R. Co.]

agent had charge of the body of Buckalew?" "If de-
fendant's agent had not buried the body of Buckalew
immediately after it was brought from the mines?" To
each of these questions the defendant separately ex-
cepted, upon the ground that they called for irrelevant
and immaterial evidence. The court sustained each of
the objections, declined to allow the questions to be
answered, and to each of these rulings the plaintiffs
separately excepted. The other rulings of the court
upon the evidence are sufficiently shown in the opinion.

Upon the introduction of all the evidence, the court
in its oral charge instructed the jury, among other
things, as follows : (1.) "Plaintiff's intestate, Bucka-
lew, though a convict, was a fellow servant of George
Miller, and defendant is not responsible to plaintiff for
any negligence of Miller, unless it be shown that Miller
was an unfit person for the defendant to have entrusted
the duties, the duties with which he is shown to have
been entrusted, and unless defendant knew of, or should,
by the exercise of due care, have discovered that unfit-
ness before the plaintiff's intestate's injury." (2.)
"That defendant, unless it was negligent in entrusting
Miller with the duties that he is shown to have been en-
trusted with, is not responsible to plaintiff for any neg-
ligence of said Miller at the time of or immediately pre-
ceding plaintiff's intestate's injuries." To the giving
of each of these portions of the court's oral charge the
plaintiff separately excepted, and also separately ex-
cepted to the court's giving to the jury, at the request
of the defendant, the following written charges : (1.)
"If the jury believe the evidence in this case, they must
find a verdict for defendant under the fifth count of
plaintiff's complaint." (2.) "If the jury believe the
evidence in this case, they must find a verdict for the
defendant under the sixth count of plaintiff's complaint."
(3.) "If the jury believe from the evidence that de-
fendant knew or ought to have known that Miller was a
careless person, but if the jury further believe from the
evidence that defendant did not know and was not
chargeable with knowledge or notice of the fact (if the
jury believe it to have been a fact), that George Miller
was a dangerous, maliciously or murderously disposed
person, and if the jury further believe from the evidence
that George Miller prized the rock down on Buckalew

for the purpose of killing him, then the jury must find a verdict for the defendant."

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

BOWMAN & HARSH and C. P. BEDDOW, for appellant. The testimony of the witness Mason as to whether Miller, the superintendent, was a competent man to be intrusted with superintendence, should have been allowed; and the opinion of witness, when a sufficient predicate is laid to authorize such opinion, is admissible.—*Furnace Co. v. Gross*, 97 Ala. 220 ; *Spiva v. Stapleton*, 38 Ala. 171 ; *Cook & Scott v. Parham*, 24 Ala. 21.

The court erred in charging the jury that plaintiff's intestate was a fellow servant of George Miller, for several reasons.    (a.)  Miller was shown by the evidence to have been intrusted with superintendence, and to have been in the exercise thereof when the death of Buckalew was caused by his negligence.   So that this charge was incorrect by reason of the "Employers' Liability Act," if not at common law.   (b.)  One convict can recover against the common hirer from the State for the negligence of another convict who has been intrusted with superintendence by the hirer, while in the exercise of such superintendence, independent of the "Employers' Liability Act."—7 Amer. & Eng. Encyc. of Law, 824 ; Cooley on Torts, 541 ; *Williams v. S. & N. Ala. R. R. Co.*, 91 Ala. 635 ; *Dalheim v. Lemon*, 45 Fed. Rep. 228 ; *Chattahoochee Brick Co. v. Braswell*, 92 Ga. 631.

WALKER PERCY, *contra.*—The fellow servant rule applies equally to convicts as to those in voluntary service.   It has been applied by this court to the case of slaves.—*Walker v. Bolling*, 22 Ala. 294; *Cook & Scott v. Parham*, 24 Ala. 21.

It would be fatal to the interest of the community and against public policy to establish a rule, which, carried to its necessary result, would have the effect of making a hirer of convicts absolutely liable for any injury to them, regardless of the exercise of due care on his part.—*Tenn. Coal, Iron & R. R. Co. v. Hayes*, 97 Ala. 201 ; *Dalheim v. Lemon*, 45 Fed. Rep. 228 ; *Williams v. S. & N. Ala. R. R. Co.*, 91 Ala. 635.

HEAD, J.–Section 2589 of the Code of 1886 provides that "A personal representative may maintain an action, and recover such damages as the jury may assess, for the wrongful act, omission or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator, or intestate was caused, if the testator or intestate could have maintained an action for such wrongful act, omission or negligence, if it had not caused death," &c. "Such action must be brought within two years from and after the death of the testator or intestate."

The present action is instituted under this statute. There are six counts of the complaint. The wrongs set forth in the first, second and third counts, as constituting the causes of action, and those set forth in the fourth, fifth and sixth counts, are of different natures. In the first class, the facts alleged show trespasses by the defendant upon the person of the intestate, causing his death, for which, had death not ensued, he could have maintained the action of trespass. This results from the allegation that defendant compelled intestate to be in the mine—there being no allegation of facts showing that it was a lawful compulsion. The circumstance that the most material damage sustained resulted from negligence of the defendant, or its servants, did not change the nature of the actionable wrong committed by the defendant. It was the infliction of the unlawful imprisonment which constituted the wrong; and the fact that inflicting it, and by reason of its infliction, the intestate was subjected to conditions which cost him special injury, cannot alter the nature of the wrong. It was not material what the character of those conditions was, whether negligent or otherwise. Their existence, causing special injury by reason of being, by the unlawful imprisonment, subjected to them, whatever their nature, aggravated the wrong and enhanced damages, had the injured party survived; and, causing death, cooprated with the trespass to give the statutory right of action to the personal representative. The fact that the intestate is described as a convict, does not affect the counts. It is, as stated, mere *descriptio personae;* necessary to be proved, however, because alleged. With these considerations, it is clear, the first, second and third counts of the complaint are good.

The fourth, fifth and sixth counts, had the injured party survived, and were suing for the damages, show actions on the case. They show that the intestate was being lawfully worked in the mine by the defendant, as a convict, under hire from proper authorities, and, in the fourth count, that he was worked under the superintendence of one George Miller who was an unfit person to whom to trust such superintendence, in that he was incompetent or careless, in consequence whereof said Miller caused a part of the roof of the mine to fall upon intestate and crush him so that he died by reason thereof; and in the fifth count that Miller as such superintendent was guilty of specified negligence, causing the death; and in the sixth count, that Miller, as such superintendent, recklessly, wantonly or intentionally caused or allowed a part of said roof to fall, causing the death. It is obvious that each of these counts is good under the statute above copied.

Though the question of misjoinder of counts by reason of the different natures of the wrongs charged, was not well raised by the demurrer, yet, as the case must be tried again, we remark that the action given by the statute is *sui generis*. It may be properly designated an action on the case, without regard to the nature of the wrongful act or omission causing the death—whether direct which would confine the remedy of a person, who received and survived the injury, to trespass, or consequential, defining case as the proper remedy. We think, therefore, there was no misjoinder of counts.

It seems to have been supposed that some of these counts were under the employers' liability act, or were governed by the rules regulating the liability of a master for the acts or omissions of fellow servants. This, we think, a misconception of the law. There was, under neither count, a relation of master and servant between the defendant and the intestate. That relation always grows out of a contract between the parties, express or implied. Here, under the last three counts, the intestate was a prisoner in the custody of the defendant, as his keeper. By law, and the defendant's contract with the proper law officers, it was authorized to put him to labor in the mine, and owed him the duty of doing him no willful harm, and of exercising reasonable care for his personal safety. The intestate had made no

contract with any one. His servitude was involuntary. It was enforced. He had no right or power to refuse to enter upon the service, or to quit it, at any time, until his sentence expired. Whatever may have been the dangers of the service, howsoever incompetent, careless or vicious may have been the defendant's agents or servants put to work with or over him, the convict had no voice, volition or freedom of action, in the matter, whatever. He had entered into no contract, express or implied, to take the risks of the wrongful acts and omissions of the defendant's servants. He was fellow servant with no one. A master's exemption from liability of a servant for negligence of a fellow-servant, in a common employment, has for its fundamental principle, that by voluntarily entering the service the servant engages to take upon himself the natural and ordinary risks and perils incident to the performance of such service, which includes the risk of injuries arising from the wrongs and omissions of fellow servants in the same employment. When he enters the service it is presumed he has observed and understands its character and the character of the servants employed therein, and contracts with reference thereto. If incompetent or unfit servants are introduced, or retained in the service of the master, he has the right, growing out of his contract, to demand of the master correction of the wrong, and if not done, to quit the service. Thus he has the means of protecting himself against the dangers of unfit fellow-servants.— 7 Am. & Eng. Encyc. of Law, 821, 824. The case of *Walker v. Bolling*, 22 Ala. 294, relied upon by counsel, clearly supports what we have said. There is no analogy between the letting to hire of a slave by his owner, and of a convict by the State under the statutory convict system. The slave was a chattel. He had no rights of action. By injuries to him the owner alone was, in a legal sense, damnified. The owner, by letting the slave to hire, to work with other servants, by his contract, assumed the ordinary risks of the service, and when suing for an injury to the slave was subject to that principle. If by law, the State, letting a convict to hire, might sue for a wrong causing his death, there might be reason for applying the rule to its suit. Wherefore, if the defendant, or any officer or servant of the defendant, acting within the scope of his employment, either will-

fully or negligently did the intestate an injury the defendant was responsible therefor. It follows these views, that all the demurrers to the complaint ought to have been overruled; and as the special limitation of two years is, by the statute, applicable to the action, the demurrers to all the pleas of the statute of limitations of one year, ought to have been sustained. The sixth plea was interposed to the first count only, and there seems to have been no ruling on the demurrer to it. It is, however, of no practical importance, since under the agreed facts showing the intestate was a convict lawfully hired to the defendant to work in the mine, there can be no recovery under either the first, second or third counts. We will state, however, that the plea contains such repugnancy that it is incapable of· being sustained by proof. Taken most strongly against the pleader, it must be assumed that the injury to intestate was received in the performance of the service for which he was hired from the State; and, in such service, he could have no fellow-servant. The averments of the plea, therefore, defeat each other.

Before adverting to the rulings upon the evidence, we observe that the merit of the controversy obviously turns upon the fifth count of the complaint. If the injury was caused by the negligence of Miller, as charged in that count, the plaintiff is entitled to recover, under the facts now before us. Whether or not Miller was generally unfit and incompetent, is of no importance in a case like this, unless it be admissible, evidentially, as shedding light upon the material inquiry whether or not, through his negligence or want of skill, the particular injury happened; and unless it may be properly considered in the assessment of damages. So, also, it is not material to the cause of action that, as alleged in the sixth count, Miller recklessly, wantonly or intentionally ·caused the injury—there being no evidence of contributory negligence on the part of the intestate. The fact of such recklessness, &c., would be material only in the assessment of damages.

There being no controversy as to the fact or manner of intestate's death, save as to the particular question of negligence, there was no necessity for the testimony of the witnesses, Montgomery and McMahan, to which objections were made, and the court committed no error in sustaining the objections.

[Buckalew, Admr. v. Tennessee Coal, Iron and R. R. Co.]

There was evidence tending to show that Miller had served in the capacity of a superintendent or boss in the mine, for the defendant, for several years. George Mason, a witness for plaintiff, testified that he, witness, had been engaged in mining about two years and a half; that he was familiar with the kind of work Miller and intestate were engaged in; had known Miller four and a half years and had seen his work often; that Miller's duties were, together with his laborers, to take down from the roof of the entry and load slate or rock in the mine; that at the time of the injury Miller's crew consisted of himself, as boss, and two other negroes and the deceased. This witnes was then asked by the plaintiff, if George Miller was a competent man to be entrusted with superintendence, to which objection was made on the ground that it called for the witness's opinion. We think the predicate for the opinion was sufficient, and that the court erred in sustaining the objection. It was not proper for plaintiff to prove that other parties had been injured in the mines while working under George Miller.

Defendant's warden, when on the stand as a witness for defendant, testified that he considered Miller a careful and competent rock man. Miller was a convict in the mines. The witness testified, on cross-examination, that he kept a record of punishments, and knew Miller had been whipped, and that he wore a chain. Plaintiff then asked witness if he had not whipped Miller for breaking the leg of one Tom Hill? The question was objected to as irrelevant and immaterial. If otherwise admissible, the question was too general to be relevant. He may have broken the leg of Tom Hill in some act or manner having no connection with his business or duties as defendant's rock boss or superintendent.

Said George Miller, when on the stand for defendant, testified that he had been punished by being whipped, but had never counted the number of times. He was then asked by plaintiff if he was kept in charge of the rock gang after whipping. The proposed question was not limited to time prior to the injury in question, and we will not put the court in error in sustaining the objection to it. It was not competent to prove that Miller was chained and whipped after the death of intestate, unless it be shown to have had some connection with such death.

[Foy v. Wellborn.]

The principles declared in this opinion, will serve to point out the errors of the court in its instructions to the jury.

In view of the developments of the former trial, we deem it proper to say, that damages recoverable in actions of this kind, are entirely punitive ; and evidence tending to show actual pecuniary loss, by reason of the death, is not admissible. The amount of the recovery, when the issues are found for the plaintiff, is left to the sound discretion of the jury, to be wisely and impartially exercised, in view of all the circumstances of the case shown in evidence.

Reversed and remanded.