WILLIAM J. HENDERSON *vs.* SAMUEL A. BOYNTON.

Essex.    November 3, 1898. — April 13, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, LATHROP,
BARKER, & HAMMOND, JJ.

*Personal Injuries — Convict Labor — Negligence — Action.*

Assuming that a convict in a penal institution, whose labor is hired by a manufac-
turer of goods, may maintain an action against the latter for injuries occasioned
by his negligence, the fact that the former, who was standing in the course of
his employment on a machine upon a platform made of boards fastened to joists
resting on the ground, stepped on the end of one of the boards which projected
beyond the joists, causing the platform to tip and his foot to go upon the treadle
of the machine and set it in motion to his injury, is not evidence of such negli-
gence. LATHROP, J. dissenting.

TORT, for personal injuries sustained by the plaintiff, who was
a convict in the house of correction at Ipswich, through the
alleged negligence of the defendant. Trial in the Superior
Court, before *Hammond, J.,* who, at the defendant's request,
ruled that there was not sufficient evidence to warrant a verdict
for the plaintiff; directed the jury to return a verdict for the de-
fendant; and, at the plaintiff's request, reported the case for the
determination of this court. If the ruling and direction were
wrong, a new trial was to be ordered; otherwise, judgment was
to be entered on the verdict. The facts appear in the opinion.

The case was submitted on briefs to all the justices.

*N. D. A. Clarke,* for the plaintiff.

*W. H. Moody & H. E. Bartlett,* (*J. H. Pearl* with them,) for
the defendant.

HOLMES, J.    This is an action for personal injuries, with
counts under the employers' liability act, St. 1887, c. 270, § 1,
and at common law. The plaintiff was engaged in taking out
a boot-heel from the mould of a machine with which he was
working, when the platform on which he was standing tipped,
his foot went upon the treadle of the machine and set it in
motion, with the result that his hand was caught and hurt.
The platform was made of boards fastened to two joists which
rested on the ground. The ends of the boards projected be-

yond the joists so far that, if a person should stand upon one, the platform would tip. It was by stepping upon one of these ends that the plaintiff came to his injury. We assume that the machine was out of order, but, whatever its defects, they did not cause the harm that happened, as has been explained.

Assuming without deciding that, as the plaintiff worked where he did by compulsion, the defendant owed him reasonable care, a majority of the court are of opinion that there was no evidence of negligence, and that the jury properly were directed to find a verdict for the defendant. The plaintiff asked for the platform, which he was free to use or not, as he saw fit. He knew how it was built, and, if he elected to use it, there is no ground on which he can make the defendant answerable for the consequences. There was no trap. The liability to tip was plain.

*Judgment on the verdict.*

LATHROP, J. I am unable to agree with the opinion of the majority of the court. The plaintiff, on February 15, 1894, was a convict in the house of correction at Ipswich, and received personal injuries while working upon a machine called the Knox heel compressor. The machine consisted of two iron uprights supporting a platform on which was a mould of the shape of a heel held in place by set screws. The heel to be pressed was placed in position by hand. As the power was applied, the platform was raised until the heel came in contact with a piece of iron above, called the plunger, which compressed the heel. The platform then fell to its former position. An iron rod about an inch in diameter, called the dejector, held in position by an iron bolt, was so adjusted to the machinery that when the platform came back to its former position it punched the heel underneath, and so loosened it that it could easily be removed by hand. The power was applied by means of placing the foot on a treadle, by means of which a loose pulley was pressed into such close contact with a fixed pulley that the two became as it were one fixed pulley.

At the time of the accident, the plaintiff and other prisoners in the house of correction were engaged upon work in accordance with the terms of a written agreement entered into on August 1, 1893, between the master of the house of correction and

the defendant, and approved by the general superintendent of prisons, by the terms of which the master let to the defendant, from that day until December 31, 1895, the labor of the prisoners in the house of correction to be employed by the defendant in the manufacture of heels for boots and shoes. The master also agreed to furnish a shop, to be heated free of expense to the defendant, to furnish officers for the shop, who should, under the direction of the master, maintain the discipline of the prisoners, and also to furnish the steam for running the machinery then in the shop. The defendant was to furnish all material necessary for the manufacture of the heels, to furnish and pay two instructors, who were to have the general oversight and management of the work, and were to be approved by the master. If materials for the manufacture of the heels were not furnished, and the prisoners were thereby compelled to be idle, the defendant was to pay the master ten cents per day for each man so unemployed.

The testimony of the plaintiff was, in substance, to the effect that at the time of the accident he had worked on the machine in question about two months, receiving instructions from one Goss, an instructor under the contract; that there was no bolt in the dejector and had not been for a month, and the absence of the bolt prevented the dejector from working; that the heels had to be taken out by hand; that on the day of the accident he was directed by Goss to take the moulds from another machine and put them in his machine; that he could not get them in without taking off the set screws, and he was directed by Goss to do so; that this rendered it difficult to get the heel out when pressed; that Goss had furnished him a platform to stand on, supported by two joists so near the centre that, if he did not keep in just such a position on the platform, it would tip; that on the day of the accident he told Goss he would not work on the machine, and Goss replied, "You will come pretty near doing as I tell you, or you will know the consequences"; that he, the plaintiff, knew the consequences would be solitary confinement; that just before the accident Goss told him to get a "wiggle" on, or he would not get the heels out that day; that after that he hurried as much as he could under the conditions; that he did not want to hurry too much with a machine of that

kind, because he was "kind of scared" of the machine, and scared of the platform, "where it would keep moving away from me"; and that he always worked carefully.

The plaintiff described the accident thus: "There was a heel in the mould. I had my left hand or fingers of my left hand partly under the heel that was in there, trying to get it out, and I had a heel in the other hand hammering down on the mould to loosen the heel so I could take it out. Meantime the platform tipped up, and my right foot went on to the treadle, and it came up and caught my hand. The heel was right in the mould."

There was much evidence in the case to contradict the witness, both as to what was said by Goss and as to the condition of the machine and of the platform, which tended to show that the plaintiff's injury was caused by his own carelessness; but the jury might have believed the plaintiff; and, if so, they would have been warranted, in my judgment, in finding that the defendant was guilty of negligence, and that the plaintiff was in the exercise of due care.

The next question in the case is as to the duty which the defendant owed the plaintiff. It seems clear that the relation of master and servant or of employer and employee did not exist between the parties; and that the doctrine of fellow servant or that of assumption of the risk has no application. The plaintiff made no contract with the defendant, and his service was involuntary. He had no choice, if the servants set to work over him were incompetent, to remain or to leave the service. However dangerous the task set him to do, he had to perform it or suffer the consequences. His duty was to obey orders. *Chattahoochee Brick Co.* v. *Braswell,* 92 Ga. 631. *Boswell* v. *Barnhart,* 96 Ga. 521. *Buckalew* v. *Tennessee Coal, Iron, & Railroad Co.* 112 Ala. 146. *Hartwig* v. *Bay State Shoe & Leather Co.* 43 Hun, 425.

The case of *Cunningham* v. *Moore,* 55 Tex. 373, cited by the defendant, decides that the relation of master and servant does not exist between a lessee of convict labor and a convict. The defendant, a lessee, was held not to be liable for the negligence of an officer of the State, nor for the negligence of the plaintiff's fellow convicts.

The case of *Lewis* v. *State*, 96 N. Y. 71, decides that a State is not liable to a convict for the negligence of one of its officers.

The cases first above cited also decide that the duty which an employer of convict labor owes to a convict is that of reasonable care ; and this, I am of opinion, is the true rule.

The defendant next seeks to bring the case within the rule laid down in *O'Hare* v. *Jones*, 161 Mass. 391, where it was held that an instructor appointed by the sheriff of the county was a public officer.

There existed in 1893, when the contract was made, and in 1894, when the accident happened, two systems of labor in the penal institutions of this Commonwealth. The one, known as the public account plan, established by the St. of 1887, c. 447, by which the principal officer of a prison purchases the raw material, manufactures it by machinery bought by him, and sells the product in the same way as other manufactures are sold ; the other, known as the piece price plan, permitted by the St. of 1888, c. 22, by which an agreement is made with an outside manufacturer who furnishes the raw material and takes away the finished work, paying for the labor of the prisoners by the piece, instead of by the day, as under the old contract system which was abolished by the St. of 1887, c. 447. See Ninth Annual Report of the General Superintendent of Prisons, 5.

Under the public account plan, the tools, implements, and machinery are to be purchased by the principal officer of the prison. St. 1887, c. 447, § 1. St. 1888, c. 403, § 3. St. 1891, c. 228. The provision in regard to instructors is found in the St. of 1887, c. 447, § 2, which chapter applies only to the public account plan.

We find no provision in regard to machinery or instructors in the statutes relating to the piece price plan, under which the contract in the case before us was made.

In *O'Hare* v. *Jones*, the instructor was appointed under the public account plan ; in the case at bar, the contract was made under the piece price plan, the instructors were appointed by the defendant, and were his servants. The machines were furnished by the defendant, and the evidence shows that he made repairs upon them.

I am of opinion, therefore, that the first count of the declara-

tion has no application to the case; and that the plaintiff was entitled to go to the jury on the questions whether he was in the exercise of reasonable care, and whether the defendant failed to exercise reasonable care towards him.