CUNNINGHAM & ELLIS v. KATE A. MOORE ET AL.

(Case No. 1088.)

1. DAMAGES.— The lessees of the penitentiary are not responsible in damages for personal injuries inflicted upon a convict resulting from defective construction of a sleeping bunk, the bunk having been constructed by a sergeant having charge of the convicts and under the immediate supervision of one of the penitentiary commissioners.

2. DAMAGES — MASTER AND SERVANT.— The liability of the master is dependent on his right to control the servant.

APPEAL from Bowie. Tried below before the Hon. B. F. Estes.

Suit brought August 4, 1879, by Kate A. Moore and her three children, the children suing by J. B. Barkman, as special guardian, to recover of appellants $25,000 damages alleged to have been sustained by the death of Spencer C. Moore, caused by the alleged negligence of the appellants.

On the 5th of October, 1880, Mary C. Moore, the mother

of Spencer C. Moore, filed her petition praying to be made a party plaintiff in the suit.

The third original petition, filed October 5, 1880, alleges that Mary C. is the mother, and Kate A. the wife, of Spencer C. Moore; that the children named were the issue of Spencer C. and Kate A. Moore; that appellants were the lessees of the penitentiary, and, as such, had the custody and control of the convicts; that Spencer C. Moore was a convict, and in charge of the lessees; that in January, 1879, appellants had a number of convicts, including Spencer B. Moore, quartered in a prison house in Bowie county, Texas, the convicts being required to occupy bunks erected by appellants and their agents, the bunks being in tiers, one above the other; that Spencer C. Moore, being in the bunk nearest the ground, the fastening of the bunk above him gave way, and the bunk fell on Spencer C. Moore, inflicting a wound from which he died. The petition alleged that at the time the bunk fell, twelve or fifteen men were assembled upon it playing cards, and charged appellant and their agents with negligence in constructing the bunks, and in permitting the men thus to congregate upon it.

October 7, 1880, appellants answered by general demurrer, and specially excepted to the petition, upon the ground that Spencer C. Moore, at the time he was injured, was a convict, and could not have maintained an action for the jury had death not ensued. And upon the further ground, that more than three months elapsed from the date of the accident to the institution of the suit, and that the same should have been brought by the executor or administrator; and specially excepted to the claim of Mrs. Mary C. Moore, because more than one year had elapsed from the date of the injury to the institution of her suit.

Appellants also filed a general denial, and alleged that the bunks were carefully constructed and were perfectly

safe for the purposes for which they were intended; that each convict had a sleeping bunk assigned to him, which he was directed to occupy; that Moore's bunk was on the opposite side of the building from the one which fell, and that Moore, in disregard of his instructions, which were reasonable and proper, left his bunk, and occupied the one upon which he is alleged to have been injured, with a full knowledge of the fact that the bunk above him was filled with twelve or fifteen men. This was sustained by evidence.

The court overruled the exceptions and the jury returned a verdict for the plaintiffs for $600.

Judgment was rendered upon the verdict, and, a motion for a new trial being overruled, defendants appealed.

*Crawfords & Smith*, for appellants.

*Geo. S. Vaughan, Dan T. Leary* and *R. D. Harrell*, for appellees.

BONNER, ASSOCIATE JUSTICE.— Under the view we take of this case, it does not become necessary to decide, whether, to the misfortune of the surviving relatives of the deceased, Spencer C. Moore, that he was a convict, shall be added the loss of the right to sue for damages resulting from his death, were they otherwise entitled thereto.

It was the evident intention and wise policy of the legislation in regard to our penitentiary system, that the state should, by officers of its own selection, retain an immediate and direct supervision and control over the convicts. The very statute under which this lease was made, expressly provided that the governor should appoint three commissioners, who, in conjunction with him, were to "Take such measures, and adopt such rules and regulations in the control and management of the penitentiary, and the convicts belonging thereto, as should

be deemed best, not inconsistent with the laws prescribing the treatment and management of convicts; and such rules and regulations shall be binding upon all officers of the penitentiary, guards, employees, hirers of convict labor, and all others in any way connected with the penitentiary, or the convicts within or without the walls." . . .

It is further provided that . . . "no lease shall be made by which the control of the prisoners, except as to a reasonable amount of labor, shall pass from the state or its officers to the lessees; and the state shall in all cases, and under all circumstances, retain the absolute control of the persons of the convicts, put them to or withdraw them from any kind of labor; station and remove them at or from any point inside or outside the prison; make or change at pleasure all rules for the discipline and punishment of convicts; prescribe regulations for their food, clothing, nursing, instruction and guarding; and any lease made shall be subject to the reservation of these rights and powers on the part of the state, whether so stated in the lease or not; the object of these limitations being to prevent the state, under the guise of contract, from parting with the right to direct how, at any time and under all circumstances, convicts shall be lodged, fed, clothed, worked and treated." . . . Gen'l Laws 15th Leg., 194–5, secs. 6 and 7; R. S., art. 3572.

The undisputed testimony shows, that, in pursuance of this power, J. T. Echols was appointed by the commissioners, sergeant in charge of the convict camp to which the deceased Moore belonged; that under his supervision, and by direction of one of the commissioners, the bunks in question were constructed; that when the convicts were turned in at night, they and the prison house were under the exclusive control of the sergeant; and that the lessees had no right to order those convicts off the bunk, by whose weight it was broken down.

It is a well settled principle, founded on reason and supported by abundant authority, that the relation and liability of master depends upon the right of control over the servant.   Cunningham v. R. R. Co., 51 Tex., 510, and authorities cited.

Applying this rule to the facts in evidence, Cunningham and Ellis were not responsible either for the construction of the bunks or for the imprudent act of the convicts which occasioned the injury.

It may be added that the uncontradicted testimony further shows, that, had it not been for the contributory fault of the deceased, he would not have been injured; and besides, according to the great weight of the evidence, the bunks were reasonably well constructed for the legitimate purposes for which they were made.

The learned judge presiding charged the law of the case, but the verdict of the jury was both unsupported by and against the evidence, and the motion for a new trial should have been granted.   For the error in overruling it, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered October 25, 1881.]