## II. LESLIE MOORE v. S. E. LEE.

### No. 2652. Decided April 16, 1919.

1.—Negligence—Agency—Physician.

Where a physician employed to attend a patient, being unable to do so when his attendance was required, sent, at the request of employer, another physician, who rendered the service contemplated, and was paid therefor, the physician selecting and sending such substitute was liable only for negligence in his selection, and not, if he used due care therein, for injuries to the patient by negligence of such substitute in his treatment of the case. (Pp. 393-398.)

2.—Same—Agent or Independent Contractor.

The position of a physician sent to attend a case of childbirth as a substitute for one engaged for that service, but unable to attend in the emergency, is not that of a servant or agent for whose negligence the other is answerable though using due care in his selection. From the nature of the duties performed, the substitute must, where he alone is treating the patient, exercise his own judgment and his own skill, as does an independent contractor not under the direction of an employer. (Cunningham v. Railway Co., 51 Texas, 510; Cunningham v. Moore, 5 Texas, 377; Wallace v. Southern Oil Co., 91 Texas, 21; De Forrest v. Wright, 2 Mich., 369; Myers v. Holborn, 58 N. J. L., 193.) (Pp. 395, 396.)

3.—Case Stated.

A physician who had given preliminary advice and undertaken to attend a case of childbirth, being unable to do so when his attendance was required,

selected and sent, at request of the husband, another physician who alone attended the case and was paid therefor by the husband. Held that the physician first employed was liable only for negligence in the selection of such substitute, and, if the latter was competent and responsible, was not liable for the result of the negligence by him in his treatment of the case. Evidence here considered is held to have no tendency to establish greater liability, and an instruction holding him chargeable for negligence of the substitute, as his agent, was properly refused. (Pp. 393-398.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

The suit was by Lee against Moore, and resulted in judgment for defendant. This was reversed by the Court of Civil Appeals on plaintiff's appeal. (162 S. W., 437.) Appellee, defendant below, thereupon obtained writ of error. The opinion of the Commission of Appeals, to whom the case was referred, recommended affirmance. The Supreme Court, however, declined to adopt the recommendation and rendered the following opinion.

*Thomas & Rhea* and *G. D. Hunt*, for plaintiff in error.—A physician who has exercised ordinary care to select a substitute physician to treat a patient in his stead who possesses that degree of skill and ability usually possessed by physicians of good standing engaged in the practice of medicine in the vicinity where the patient resides, is not liable to the patient for injuries caused by the treatment of the substitute physician and due to his lack of skill and ability as a physician. Texas Cent. Ry. Co. v. Zumwalt, 103 Texas, 607, 132 S. W., 113; Galveston, H. & S. A. Ry. Co. v. Scott, 44 S. W., 589; So. Pac. Co. v. Mauldin, 46 S. W., 650; Shearman & Redfield on Negligence, 6th ed., secs. 1a, 9 and 9b; Thompson on Negligence, sec. 6724; Myers v. Holborn, 58 N. J. Law, 193, 30 L. R. A., 345; Hitchcock v. Burgett, 38 Mich., 501; Brown v. Bennett, 122 N. W. (Mich.), 305; DeForrest v. Wright, 2 Mich., 368; Keller v. Lewis, 65 Ark., 578, 47 S. W., 755; Street Ry. Co. v. Kessler, 84 Ohio St., 741, 95 N. E., 509, 36 L. R. A. (N. S.), 50; Laubhoem v. Steamship Co., 107 N. Y., 228, 13 N. E., 781, 1 Am. St., 815; Ballard v. C. & O. Ry. Co., 139 S. W. (Ky.), 771; 30 Cyc., 1581; 22 Am. & Eng. Ency. of Law, 805; Daugher v. Painter, 5 Barnwell & Creswell's (King's Bench), 547; Milligan v. Wedge, 4 Perry & Davison's (Queen's Bench), 714.

*Gibson & Callaway*, for defendant in error.—A physician, after having undertaken the treatment of a patient, who without notice to or consent of the patient, abandons the case and sends as a substitute for himself another physician to continue the treatment, is, regardless of the degree of care used by him in selecting said substitute physician, primarily liable for any injury received by the patient proximately resulting from negligence or lack of the requisite degree of professional skill upon the part of the substitute physician. Graham v. Gautier, 21 Texas, 112; Brooke v. Clark, 57 Texas, 105; Wilkins v. Ferrell, 30

S. W., 450; Landon v. Humphrey, 23 Am. Dec.,·333; Hyrne v. Erwin, 55 Am. Rep., 15; Lawson v. Conaway, 18 L. R. A., 627; Howard v. Grover, 49 Am. Dec., 481, and notes;.Ghere v. Zey, 107 S. W. (Mo.), 418; Grainger v. Still, 85 S. W. (Mo.), 1114; Hales v. Raines, 130 S. W. (Mo.), 425; 22 Am. & Eng. Enc. (2nd ed.), 805; 30 Cyc., 1581; Street on Personal Injuries in Texas, 592-597.

A physician undertaking the treatment of a patient thereby becomes engaged to attend the case so long as it requires attention unless he gives notice to the contrary or is discharged by the patient, and he is bound to use ordinary care, not only in his attendance and treatment of the case, but in determining when he may safely and properly discontinue his attendance. Blackburn v. Curd, 106 S. W. (Ky.), 1187; Dale v. Donaldson Lbr. Co., 2 S. W. (Ark.), 703; Lawson v. Conaway, 18. L. R. A., 627; 30 Cyc., p. 1573, et seq., and authorities cited; 22 Am. & Eng. Ency. (2nd ed.), p. 802, and authorities cited.

A physician, after having entered upon the treatment of a patient, is not justified in abandoning the case at a critical period of the illness on account of other business and professional engagements, and if he does so abandon the case, is liable in damages for injury proximately resulting therefrom. Tomer v. Aiken, 101 N. W., 769; Barbour v. Martin, 62 Me., 536; Lathrope v. Flood, 57 L. R. A., 217; 30 Cyc., 1576.

Mr. Justice GREENWOOD delivered the opinion of the court.

This suit was brought by defendant in error, S. E. Lee, to recover damages of plaintiff in error, Dr. H. Leslie Moore, for an alleged breach by plaintiff in error of his contract to attend and treat the wife of defendant in error during and after birth of a child, and for alleged malpractice on the wife, during her confinement, by Dr. A. D. Hardin, for whose acts and negligence, it was charged, plaintiff in error was liable. The plaintiff in error answered that he arranged for Dr. Hardin, who was a careful and skillful physician, to attend defendant in error's wife, during the child-birth, by express agreement with defendant in error, and that he was to be notified in the event any complications arose, but was never so notified, and that he had not violated his agreement with defendant in error.

The material facts proven were that plaintiff in error and defendant in error had entered into an agreement, whereby the wife of defendant in error was to have the services of plaintiff in error, as a physician, for an agreed fee, during the approaching confinement of the wife, who was visited and examined by defendant in error between 1 and 2 o'clock on the morning of February 6, 1911, and, at that time, plaintiff in error promised to return when needed. On account of the setting of a lawsuit against plaintiff in error and others, at Fort Worth, for February 6, 1911, and pressing professional engagements, plaintiff in error concluded that he would not be able to return to Mrs. Lee. It was the custom.among the reputable physicians of Dallas, where the parties resided, for a physician who determined that he could not meet all his

engagements to send some other physician, and, about 8 o'clock on February 6, 1911, plaintiff in error telephoned Dr. Hardin that he might need him during that morning. Before 9 o'clock defendant in error notified Dr. Moore that it was time for him to come to Mrs. Lee, when Dr. Moore replied that, because of important business, he would be unable to come, but he would send another physician, to which defendant in error responded with a request to send him in a hurry. Until about a quarter past 9 o'clock there was another physician in the neighborhood of defendant in error, with whom defendant in error talked, without asking him to attend Mrs. Lee. After being requested by defendant in error to send another physician in a hurry, plaintiff in error telephoned to Dr. Hardin, whose general reputation in Dallas as a physician was good, saying that he had a case, to which he wanted to send him, that it was a partnership case, of which he expected to take care, and plaintiff in error requested Dr. Hardin to go out and look after the wife of defendant in error, and to notify him if he needed help or anything went wrong, whereupon he would either come himself or send assistance. Dr. Hardin reached the home of defendant in error about 10 o'clock and attended to the delivery of the child, and there was evidence to raise the issue of injury to Mrs. Lee through acts or negligence of Dr. Hardin. Defendant in error expressed no dissatisfaction to Dr. Hardin at the time the child was delivered, and paid him on his second or third visit the full fee, which he testified he had agreed to pay plaintiff in error, and paid nothing to plaintiff in error.

A jury trial resulted in a verdict and judgment for plaintiff in error, which was reversed by the Court of Civil Appeals, and section B of the Commission of Appeals recommended that the judgment of the Court of Civil Appeals be affirmed.

The trial court charged the jury that the law required the exercise of ordinary care by plaintiff in error in his personal attention to Mrs. Lee, and also required the exercise of ordinary care by plaintiff in error in the selection of another physician for her. The trial court refused requests to charge that any negligence or lack of skill on the part of Dr. Hardin, resulting in injury to Mrs. Lee, was chargeable to plaintiff in error, regardless of the care exercised by plaintiff in error in Dr. Hardin's selection.

The controlling question here is whether the action of the trial court was correct in giving and refusing these charges.

It is quite undeniable that defendant in error assented to plaintiff in error's own non-attendance on his wife. He admits that, when telephoned plaintiff in error's reasons for seeking to be released from treating his wife, his response was to urge haste in sending another physician. It is immaterial to the matter of plaintiff in error's liability for Dr. Hardin's negligence or lack of skill, under the issues joined herein, whether plaintiff in error represented Dr. Hardin to be his partner at the time he proposed sending him. No pleading was filed by defendant in error, alleging that Dr. Hardin was held out as plaintiff in error's

partner, nor seeking to hold plaintiff in error liable as a partner with Dr. Hardin, nor seeking to recover any damages for any misrepresentation of Dr. Hardin's status as a partner. So, the question is simply what was plaintiff in error's duty, under the law, when defendant in error asked him to speedily dispatch another physician to treat Mrs. Lee? To our minds this question admits of no answer save that the duty of plaintiff in error was to exercise ordinary care in the selection of the physician to be sent, as the jury was instructed by the trial court.

The opinion in Texas Central Railroad Co. v. Zumwalt, 103 Texas, 607, 30 L. R. A. (N. S.), 1206, 132 S. W., 113, declared that where a railroad company furnished an employe with a physician, the railroad company would not be held liable for the physician's negligence, unless, in treating the employe he was the agent of the railroad company. No more can plaintiff in error be held liable for Dr. Hardin's negligence or lack of skill, in the absence of facts to establish that Dr. Hardin was acting as the agent of plaintiff in error when he was treating defendant in error's wife.

From the very nature of the employment, the physician, who takes the place of another, must while he alone is treating the patient, exercise his own judgment and his own skill; and he is truly an independent contractor.

In the leading case of Cunningham v. Railroad Co., 51 Texas, 510, 511, it is said: "The true test . . . by which to determine whether one who renders service to another does so as a contractor or not, is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of the work, and not as to the means by which it is accomplished. (Shear. & Red. on Neg., secs. 76-79; 1 Red. on Railways, 505; Pack v. Mayor of City of New York, 4 Seld., 222.) It is now the well established doctrine in Europe and the generally prevailing rule in this country, that the ordinary relation of principal and agent and master and servant does not subsist in the case of an independent employe or contractor who is not under the immediate direction of the employer."

The doctrine is reaffirmed in Cunningham v. Moore, 55 Texas, 377, 40 Am. Rep., 812, in this language: "It is a well settled principle, founded on reason and supported by abundant authority, that the relation and liability of master depends upon the right of control over the servant."

This court said in Wallace v. Southern Cotton Oil Co., 91 Texas, 21, 40 S. W., 399: "If Davis was an independent contractor in the sense that the company had no right of control as to the manner in which the work was to be done, then he was not the servant of the company; and the plaintiff, having been employed by him, can not recover. Cunningham v. Railway Co., 51 Texas, 509."

The law applicable to the liability of one medical practitioner for the acts of another, who undertakes to look after the former's patients, and the reason therefor, is well condensed in DeForrest v. Wright, 2 Mich.,

369, 370, as follows: "To hold that every person, under all circumstances, would be responsible for injuries committed by another person while employed in his behalf, involves an absurdity no one would countenance. It would create a penalty from which few could escape; for every man is or ought to be directly or indirectly, nearly or remotely engaged in the service or on behalf of his fellow man. But from an examination and comparison of the adjudged cases, the rule now seems very clearly to be this, that where the person employed is in the exercise of an independent and distinct employment, and not under the immediate control, direction, or supervision of the employer, the latter is not responsible for the negligence or misdoings of the former."

The case last cited was followed by the New Jersey Court of Errors and Appeals in Myers v. Holborn, 58 N. J. L., 193, 30 L. R. A., 345, 55 Am. St. Rep., 606, 33 Atl., 389, on facts very similar to those of this case, the court saying: "The principal facts which were proved at the trial of the cause are as follows: The defendant, a practicing physician of the City of Bayonne, promised the plaintiff, who resided in that city, to attend his wife professionally during her confinement. A short time before that event took place he left the city for a three days' vacation; having first visited the wife of the plaintiff, and made an examination of her condition, from which he concluded, as he informed her, that his services would not be needed for a few days. Before his return, however, she was confined. The plaintiff, when his wife's travail came on, telephoned to the house of the defendant for him to come at once; and in response to this message one Dr. P. arrived, stating that Dr. Myers was out of town, and that he represented him, and proceeded to take charge of the case, and to deliver the plaintiff's wife of her child, without any objection being made. It was not suggested that his treatment of the wife was unskillful, but evidence was offered to show that after the birth of the child he improperly severed the umbilical cord so close to its body that it was impossible afterwards to tie it, and that the child consequently died, in a short time, of umbilical hemorrhage. The shock caused by her child's death under these circumstances, it was testified, so affected the mother as to seriously injure her health and render her an invalid for many months, thereby depriving the plaintiff of her services and companionship, and making it necessary for him to incur expenses which he would not otherwise have been called upon to meet; and this suit was brought to recover compensation for such loss of services and companionship, and for such expenses, on the theory that Dr. P. was the agent and representative in this matter of the defendant, and that therefore he was legally liable for these results of Dr. P.'s unskillfulness. The trial judge adopted this theory, advanced on behalf of the plaintiff, in his charge to the jury, and so instructed them. In this, it seems to me, there was an error. Dr. P. and the defendant were each of them practicing physicians in this State, having no business connection with one another, except that Dr. P. was attending the patients of the latter while he was temporarily absent. Even

if it be admitted, therefore, that Dr. P. was employed by the defendant to attend upon the wife of the plaintiff, that fact did not render the defendant liable for his neglect or want of skill in the performance of this service, for an examination of the authorities will show that a party employing a person who follows a distinct and independent occupation of his own is not responsible for the negligence or improper acts of the other. Laugher v. Pointer, 5 Barn. & C., 547; Milligan v. Wedge, 4 Perry & D., 714; DeForrest v. Wright, 2 Mich., 368; Wood, Mast. & S., sec. 311."

In the light of the long established custom among the Dallas doctors for a doctor unable to treat all his patients to send another doctor to those he is not able to attend, we do not think that plaintiff in error's statement that he expected to take care of this case, and that it would be a partnership case, can be reasonably construed otherwise than as meaning that plaintiff in error ·expected to resume charge of the case when his other engagements would permit, and that he expected Dr. Hardin to be compensated for the services he would render, while plaintiff in error would be compensated for the services he would render. In discussing the effect of a division of service between physicians, Ruling Case Law says: "They may make such division of service as, in their honest judgment, the circumstances may require and each, in serving with the other, is rightly held answerable for his own conduct, and as well as for the wrongful acts or omissions of the other which he observes and lets go on without objection, or which in the exercise of reasonable diligence under the circumstances he should have observed, but beyond that his liability does not extend. Finally, it seems that a physician or surgeon may, on leaving town or in other case of need, recommend or employ another physician or surgeon to treat a patient for him and in the absence of negligence in such. selection will not be liable for the negligence or lack of skill of the substitute practitioner." 21 R. C. L., pp. 394, 395.

Given the most favorable interpretation to defendant in error, in determining plaintiff in error's responsibility for the alleged negligence and lack of skill of Dr. Hardin, the facts of this record disclose nothing further than an undertaking by plaintiff in error to furnish another physician, whose work, in the absence of plaintiff in error, was necessarily entirely free from his control. And, as said by the Ohio Supreme Court in Railway Co. v. Kessler, 84 Ohio St., 79, 36 L. R. A. (N. S.), 53, 95 N. E., 511: "It is not the law that one who contracts to furnish or pay for medical or surgical aid and attention to another is liable at all events for the mistakes or incompetency of the physician or surgeon he may employ for that purpose. There must be some neglect or carelessness or misconduct on his part in the performance of his obligations arising under such contract. If he act in good faith and with reasonable care in the selection of the physician or surgeon, and has no knowledge of the incompetency or lack of skill or want of ability on the part of the person employed, but selects one of good standing in his

profession, one authorized under the laws of this State to practice medicine and surgery, he has filled the full measure of his contract, and can not be held liable in damages for any want of skill or malpractice on the part of the physician or surgeon employed."

In our opinion, there was no error in the charge of the court nor in the refusal of the charges requested, and finding no other reversible error in the record, it is ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*