## GALLOWAY v. KING. (No. 3060.)

(Court of Civil Appeals of Texas. Texarkana. April 29, 1925. Rehearing Denied May 14, 1925.)

1. **Appeal and error ⟝1001(1)—Jury's finding that status of master and servant existed will not be set aside, except evidence shows the contrary, as matter of law.**

Jury's finding that status of master and servant existed will not be set aside, except evidence shows the contrary as matter of law.

2. **Master and servant ⟝316(1)—One employed to haul hay held independent contractor, rather than employé.**

School janitor, hired by owner of hay to haul 100 tons of it to certain purchaser in his spare time at rate of 3 to 5 loads a week, or more if required by purchaser, who in such work was to use truck, oil, and gasoline furnished by owner of hay, and to receive payment at rate of $1.50 a trip, *held* independent contractor, rather than employé.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by George S. King against B. F. Galloway. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

The appellee brought the suit against appellant for damages for personal injuries alleged to have been sustained as the result of negligent operation of a heavy truck, in a manner violative of the state law and the city ordinances of Dallas, belonging to the appellant and being driven by his employé, J. J. Tillery, in the work of his employment. It was alleged and proven that the appellee was riding on a motorcycle on Main street, going east, and a truck loaded with hay was being driven by J. J. Tillery on Main street, going west. At a point just west of the center of the intersection of Main and Murray streets, which runs north and south, the truck and the motorcycle collided, causing personal injuries to appellee. It was alleged, and the evidence in behalf of the appellee shows, that the truck was being operated at a speed of 25 miles an hour, in violation of law, and that the driver of the truck, without notice or slackening the speed, and without first going beyond the center of the intersection of Main and Murray streets, turned from Main street to the left into Murray street, running diagonally across the streets to the west of the center of the intersection and causing the truck to forcibly strike the motorcycle, then just west of the center of the street intersection.

The appellant, besides a general denial and a plea of contributory negligence, specially pleaded that J. J. Tillery was not his employé, but was in the relation of an independent contractor operating the truck under a contract whereby J. J. Tillery used the truck to transport hay to Dallas for the sum of $1.50 per load.

The case was tried before a jury on special issues, and their special findings of fact were to the effect: (1) That J. J. Tillery was not an independent contractor for the delivery of the hay; (2) that J. J. Tillery was guilty of negligence in the manner in which he drove the truck across the street at the time of the collision, and that such negligence proximately caused the alleged injury to appellee; (3) that appellee was not guilty of contributory negligence. In keeping with the verdict, the court entered judgment in favor of the appellee for the amount of damages found by the jury.

The appellant has appealed from the judgment, predicating error exclusively upon the undisputed evidence establishing that J. J. Tillery, the driver of the truck, was an independent contractor engaged in the performance of an independent contract, and was not an agent or employé of appellant at the time of the collision and injury. There does not appear to be any conflict in the evidence that bears upon the particular point made

on appeal. The entire testimony is found in the statements of J. J. Tillery and the appellant. The injury occurred on January 30, 1920, J. J. Tillery testified:

"I am a laborer. I drive a truck sometimes, and am a carpenter and painter. I am a white man, 40 years old, and am married. I am working for Mr. Galloway now, and I have been working for him since 1916, off and on. I was working for him in January, 1920, driving a truck. I hauled cotton seed and hay for him at that time. In January, 1920, I had been driving a truck all the summer and fall before; I had been driving a truck since 1916, off and on. I also worked and carpentered on the gin for Mr. Galloway. In January, 1920, I was driving the truck at the time Mr. King was hurt on Main street; I was driving Mr. Galloway's truck at the time, hauling hay. I was carrying the hay to the Steger Grain Company out by the Ford plant. I had come from Mesquite at Mr. Galloway's hay barn. It was Mr. Galloway's hay that was on the truck. * * * In reference to my contract with Mr. Galloway for hauling the hay: Mr. Galloway said to me he had 100 tons of hay to haul to Steger Grain Company, and asked me what I would haul it for, and I said $1.50 a load. He was to furnish the gas, oil, and expenses of the truck, and I was to have $1.50 a load for doing the hauling of it. I was to do the loading and unloading of the hay. He did not have anything to do with the manner of my hauling the hay from Mesquite to Dallas. * * * I had hauled 8 or 10 loads at the time of the accident. All together I hauled enough to make the 100 tons of hay. * * * I had Mr. Davis to haul some of it for me. Mr. Galloway did not know anything about that. I was janitor at the school building, and the trustees gave me permission to also work outside. The reason I was paid by the load was because I could not put in all my time hauling. I could not put in over 6 or 7 hours a day hauling hay, as I had to be at the schoolhouse in the evening to sweep up and get things in shape and readiness there. Mr. Galloway just told me he wanted 100 tons of hay hauled to Steger Grain Company, and I told him I would haul it. He did not tell me how long I would have to take to get the 100 tons into town. He told me to take the truck and haul it, and he would pay me $1.50 a load for it."

The appellant testified:

"The truck that was in the accident belonged to me; it was being driven by J. J. Tillery. I had an understanding or agreement with J. J. Tillery to haul the hay. I was to give him $1.50 a trip to haul about 100 tons of hay which I had sold the Steger Grain Company. I told Mr. Tillery that I had some hay I wanted hauled to the Steger Grain Company in Dallas, about 100 tons, and that they would probably use from 3 to 5 loads a week; that there was no specified time in which to deliver it to them, but that I wanted to keep them in hay on hand; that he could deliver it a load at the time, but to see to it the Steger Grain Company had hay all the time. I knew Mr. Davis sometimes hauled the hay to the Steger Grain Company, but I did not have anything to do with the employment of Mr. Davis. I said something to Mr. Tillery about who employed Mr. Davis and what he was doing, and Mr. Tillery remarked that he was swopping work with Mr. Davis. * * * I knew how much hay Mr. Tillery was hauling at a load; he was hauling from 1½ tons to 1¾ tons. The truck would hold between 65 and 70 bales. If he was undertaking to haul only half a ton at a load, I would have reminded him that he was not carrying out his contract. If he was overloading, I would have reminded him that it was my truck. If he had run the truck without water, I would have reminded him that it was my truck."

Liveley & Dougherty, of Dallas, for appellant.

Thomas, Frank, Milam & Touchstone, of Dallas, for appellee.

LEVY, J. (after stating the facts as above). [1] If the conclusion reached by the jury was manifestly proper upon a reasonable view of the evidence, that the driver of the truck was not in the relation of independent contractor to appellant, it becomes immaterial whether the question of the relationship's being in the nature of an employé or an independent contractor was one purely for the court, or one of fact for the jury. We would be authorized to set the verdict aside only in case the evidence does not show, as a matter of law, that J. J. Tillery was not an employé. The court's charge correctly set out the adopted test for determining whether one is an employé or servant, or an independent contractor, as applied to tortious acts to third persons. It followed the rule as laid down and discussed in the following cases: McKinney v. Sherwin-Williams Co. of Texas (Tex. Civ. App.) 271 S. W. 133; Cunningham v. Ry. Co., 51 Tex. 507, 32 Am. Rep. 632; Cunningham et al. v. Moore, 55 Tex. 373, 40 Am. Rep. 812; Wallace v. Oil Co., 91 Tex. 18, 40 S. W. 399; Moore v. Lee, 109 Tex. 391, 211 S. W. 214, 4 A. L. R. 185; Crow v. McAdoo (Tex. Civ. App.) 219 S. W. 241; Higrade Lignite Co. v. Courson (Tex. Civ. App.) 219 S. W. 230.

[2] And looking to the evidence, the agreement between the appellant and Tillery, as between themselves, as well as to third persons, has the elements, by intention and effect, legally fixing the status of that of independent contractor. By the agreement, in purpose and object, the appellant was, and the jury could not otherwise so say, merely agreeing with J. J. Tillery to do the special and stated work of hauling the hay, to the extent of 100 tons, and no more, to the warehouse of the Steger Grain Company for the fixed sum of "$1.50 a trip." He was to haul, not less than, but as much as, "about 100 tons of hay," for which he was to be paid "$1.50 a trip." The delivery was to be made by Tillery at the rate of "from 3 to 5 loads a week," or more than that if necessary to keep the Steger Grain Company in "hay all

the time." It was Tillery himself that was "to see to it that the Steger Grain Company had hay all the time." By the agreement so reached between the parties, Tillery was left free, by intention and as a legal consequence, to make the delivery "trip" in his own way and according to his own judgment, free from control by appellant as to the details of performance, so long as he accomplished the result of providing the Steger Grain Company "with hay all the time." It was results alone in the performance of the agreement that appellant was looking to and was interested in and had control of. Tillery was free to do the hauling at any hour of the day, or on any day or days of the week, and to go any particular road or street of his choosing, however direct or indirect, and the appellant could not direct or control otherwise. If Tillery hired another to do the hauling for him, the appellant could not direct or compel otherwise. It would not be a violation of the letter or the spirit of the agreement for Tillery to perform it in his own way and manner, free from control or direction otherwise. The fact that appellant furnished the truck and the gas and oil to operate it would not, in the light of the nature of the agreement, constitute Tillery an employé, as it were, a drayman, rather than a special independent contractor to make delivery of the hay. A cropper on shares has all tools and means furnished to do his work, yet he is not usually, as a legal consequence of the facts, a mere hired hand. And while appellant could object to abuse of the truck by Tillery, as overloading or running it without sufficient oil or gas, the right to do so would arise in virtue of ownership of the truck, as a means of protection of property from injury, and not in virtue of authority to control Tillery himself in the manner of executing the agreement. Therefore we conclude that Tillery alone, and not the appellant, is liable for his personal negligence in the case.

The judgment is accordingly reversed,· and judgment is here rendered on the undisputed evidence in favor of appellant, with all costs of the trial court and of this appeal.

Reversed and rendered.

## On Rehearing.

The evidence in the case being wholly undisputed as to the contract itself, whether Tillery was an independent contractor presented a question for the court. By the contract, Tillery was "to haul 100 tons of hay to the Steger Grain Company" for the fixed price of "$1.50 a trip or load." The appellant had 100 tons of baled hay in a hay barn in Mesquite that he had contracted to sell and deliver to the Steger Grain Company at Dallas. The contract was not merely to pay Tillery for such hauling as might be done by him at the rate of $1.50 per trip or load. It was contemplated and agreed that Tillery should haul and deliver the entire 100 tons of hay. The time of delivery was to be as directed by "the Steger Grain Company." Tillery agreed to produce the certain understood and specified result of hauling and making delivery to the Steger Grain Company of "100 tons of hay." The frequency of the deliveries was to be in · accordance with the direction of the Steger Grain Company, made to Tillery himself. In other words, Tillery's undertaking was to do the job of delivering 100 tons of baled hay to the Steger Grain Company, and to make the deliveries in such quantities each week as the Steger Grain Company would direct him to do. The contract conclusively evidences a definite beginning, continuance, and ending of the thing to be done. And the concurring facts become conclusive as to the effect of the contract, that Tillery could not terminate his personal service whenever he chose without a breach of the contract, and that Galloway did not have the unrestricted right to end the particular service whenever he chose to do so, without regard to the final result of the work. The result of the work was the essential thing to be done, which was the delivery to the Steger Grain Company of the entire bulk of "100 tons of hay." Such contract, as we conclude, constituted the relation of contractor and contractee, independent of subserviency, and not merely that of master and servant. 1 Labatt on Master and Servant, § 21, p. 67; 31 C. J. p. 473; 14 R. C. L. p. 72. This conclusion is not at variance, as appellee seems to urge, with the case of Fidelity & Guaranty Co.· v. Lowry (Tex. Civ. App.) 231 S. W. 818.

The motion is overruled.