HAMBLEN et al. v. MOHR et al.

No. 11477.

Court of Civil Appeals of Texas. Galveston.

March 4, 1943.

Rehearing Denied May 6, 1943.

170

J. S. Bracewell, W. P. Hamblen, Jr., and Huis Coy, all of Houston, for appellants.

Devereaux Henderson, of Houston, for Mohr, appellee and cross-appellant.

Wood, Gresham, McCorquodale & Martin and Newton Gresham, all of Houston, for appellee J. C. Penney Co.

CODY, Justice.

This suit was brought by Charles W. Mohr against J. C. Penney Company (hereafter called Penney), a department store operator, and against H. C. House, the owner of the building in Houston which was rented by Penney. The suit was for damages to Mohr's wife, suffered when she fell down one of the stairways which led from the ground floor to the basement of the building.

Plaintiff's petition alleged in substance that the stairway in question was a winding one, the treads of which were built fanwise, being narrower next to the banister, and wider at the opposite end, and that the stairway was constructed so as to violate an ordinance of the City of Houston which was specially pled; that the lights of the store cast shadows upon the steps, and the condition thus produced was inherently dangerous and constituted a concealed danger at the time the building was leased. And plaintiff alleged that Penney and House were jointly and severally liable for the injuries sustained by Mrs. Mohr, who was an invitee of Penney, being in the building to look at certain plants which Penney had advertised for sale.

Penney answered that it had paid the Mohrs the sum of $7,500 for a complete release of any liability for the damages sued for; and by cross-action against House, sought to hold him liable therefor, and to recover the sum thus paid.

Before the case was tried, House died, and his independent executors were made defendants in his place. But for convenience, we will continue to refer to House's independent executors as House. House's answer to plaintiff, in addition to a general demurrer and denial, contained a plea that Mrs. Mohr was guilty of contributory negligence; and he pled further that he engaged a competent contractor to erect the building under the supervision of a competent architect, according to plans and specifications prepared by said contractor; that said plans and specifications were approved by the proper city officials as being in conformity with the ordinances pertinent thereto, and that said contractor and architect represented that same in all respects conformed to the city ordinances, and the building, as completed, was approved by the proper city officials in 1919, as being conformable to the City ordinances and same was in fact so conformable. Thereafter, for many years, the building was occupied by two certain named tenants, successively. That Penney thoroughly examined the building before leasing same, and required certain alterations therein, but accepted the stairs in question. Against Penney's cross-action, House filed a plea in abatement upon the ground that the lease required that matters in dispute between it and House be arbitrated. House pled that, if it be found he was guilty of negligence, that such negligence was merely passive, whereas Penney, by operating the store with said stairway, if same was negligence, was active negligence; and, since Penney and plaintiff had settled and compromised the claim, no further claim could be urged against House. House further pled that if negligence be shown in the construction of the stairs, that he should be found only passively negligent, and Penney should be found actively negligent, and House asked that, if any sum was recovered against him he should have judgment against Penney, indemnifying him against any claim of plaintiff. Against this claim of indemnity, a plea of limitations was interposed.

At the conclusion of the evidence, House prayed for an instructed verdict, which was overruled.

The jury found that Mrs. Mohr had suffered damages to the extent of $22,500.

And House moved for judgment notwithstanding verdict, which was overruled. Plaintiff moved for judgment in the sum of $15,000, which sum is arrived at by crediting against the sum of $22,500 the sum of $7,500 paid by Penney. This motion the court refused and rendered judgment for plaintiff against House for one half of Mrs. Mohr's damages, or the sum of $11,250. House has appealed, and plaintiff has cross-appealed.

The points urged by House on appeal are, in substance, as follows:

1. House's negligence, if any, was, as a matter of law, passive; and his independent executors are entitled to a judgment against Penney by way of indemnification.

2. Under the tenancy contract, House's estate could not be held liable to Penney's invitees.

3. No violation of City ordinance was shown to have been committed or to exist at the time of the accident.

4. The alleged defect was not such concealed defect as to render House liable to invitees of Penney.

5. There was no evidence of negligence on the part of House in constructing and maintaining the stairway in the building of its type.

6. The plaintiff having settled with Penney for $7,500, judgment for no greater sum than $7,500 could be rendered against House's estate.

Appellee has presented counterpoints. These counterpoints cover some six pages of his brief and, therefore, cannot be set forth for want of space.

■■ The question of House's liability, under the facts of this case, we have found difficult of solution. A stairway within a department store is not a structure which is intrinsically dangerous, no matter how carefully constructed; nor is the erection of a department store building inherently dangerous. Anyone who employs an independent contractor to do work which is inherently dangerous, no matter how skillfully performed—such as blasting with large amounts of dynamite, is liable for injuries resulting from such blasting. Cisco & N. E. Ry. Co. v. Texas Pipe Line Co., Tex.Civ.App., 240 S.W. 990. But the owner of a building may engage an independent contractor to erect it, and is not responsible for the contractor's faults, unless it be shown that he did not use ordinary care in selecting a competent contractor. White v. Green, Tex.Civ.App., 82 S.W. 329.

■■ In the present case, the undisputed proof shows that House employed a reputable architect to draft the plans and specifications for the building and to supervise its construction, and employed a reputable contractor to construct it. And no contention is made that, if said plans and specifications be taken as the standard for such construction, the stairs as constructed were defective. The fault in the construction, for which recovery is sought, is a fault in the plan of construction. If House, a mere layman with respect to the art of building, had drawn the plans, he would obviously have made himself liable for injuries resulting from faulty planning. However, "One who has taken all proper care to render a building safe is not liable for unknown and hidden defects in it, as for example, where he has committed its plan and construction to a competent architect and builder." 45 C. J. 865. Plaintiff makes no allegation that House was negligent in failing to exercise ordinary care in employing a competent architect and builder.

■ We have no difficulty in overruling appellee's contention that House was guilty of malfeasance, in that the stairway was found by the jury to have been constructed in violation of the City's building ordinances. The planning and construction of such a stairway was, as stated above, a matter which the owner of a building may employ an independent contractor to do for him. The owner's duty was to exercise ordinary care to engage a competent agent to perform this service. Therefore, if the planning and construction of a stairway is such as to visit the guilt of malfeasance on him responsible for so doing, the guilt is that of him who planned and constructed same. The fault of the builder cannot thus be imputed to owner of the building.

■■ So far we have discussed the liability of the owner of a building to his own invitees. The liability of a landlord for injuries suffered upon leased premises seems to be fixed by Perez v. Raybaud, 76 Tex. 105, 13 S.W. 177, 178, 7 L.R.A. 620, adopted by the Supreme Court. The rule laid down there is that in the absence of fraud or deceit, there is no implied covenant that the demised premises are fit for occupation, or for the particular use which the tenant intends to make of them, and that the tenant has no remedy against the landlord, nor do

his servants or others entering under the tenant's title. In the cited case the court declined to hold the landlord liable for injuries suffered by a servant of the tenant, though the dangerous condition which caused the injury existed at the time the premises were leased. The reason for so holding seems to be "'there is no reason for holding the lessor, in the absence of any agreement or fraud, liable to the tenant for the present or future condition of the premises, that would not be equally applicable to a similar liability sought to be imposed by a grantee in fee upon his grantor'". In the Perez case it is further stated; "The authorities are abundant sustaining the doctrine that the owner cannot create a nuisance on his premises, and relieve himself of liability to a third person injured thereby, by leasing. It is also the law that he would be liable to a stranger where the defective structure causing the injury is on the premises when they are leased; but such liability would not exist in favor of the tenant, * * * because he does not owe the tenant the duty of repairing, as he does the public and strangers. The cases cited by plaintiff, holding the landlord liable, are cases where the injury was to third persons lawfully upon the rented premises, or where the landlord owed a duty to the public to repair." It is somewhat difficult to see how a person can be lawfully upon leased premises, except at the invitation or by the license of the lessee. If he is on the premises at the invitation of the lessee, it is difficult to see how he did not enter under the title of the tenant. However, the case of Albert v. State, 66 Md. 325, 7 A. 697, 59 Am.Rep. 159, cited in the Perez case, was a case where the landlord had leased a wharf, which he knew to be unsafe. The court argued that a wharf was in the nature of a highway, and argued that the landlord had in effect rendered the highway unsafe, and thus created a nuisance, and seems to hold the owner of the wharf liable, not because of his ownership, but rather because he was responsible for a nuisance, which has caused the damages. In other words, a landowner is liable for damages caused by a nuisance created by him—not because of his ownership of the land but because of his responsibility for the nuisance, and injuries which it caused. The owner of a gun, who knew that it was so defective that if it were discharged, it was likely to injure the one to whom he had rented it, would be liable not because of his ownership of the gun, but because he knowingly and reck-lessly put a dangerous instrumentality in a situation where it was likely to injure whoever used it. Indeed, "the duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care." Quoted with approval in Marshall v. San Jacinto Building, Inc., Tex.Civ.App., 67 S.W.2d 372, 374.

We have so far discussed House's liability without reference to any liability which he may have imposed upon himself by covenants contained in his lease. As that is a separate ground of liability, which arises from contract and not from the status of the landlord, as such, we shall, in order to avoid complexity and confusion, defer the discussion of this phase of the case until after we have disposed of the question of House's liability, outside of any which may have been imposed by his covenants.

 In their answers to special issues, the jury found, in effect, that the steps in question were so faultily constructed that they did not provide safe "grounding" for the foot of an ordinary person using the stairway in a reasonably prudent manner. The jury also found that the condition of the steps, as constructed, constituted a concealed danger at the time and on the occasion in question. With reference to the finding that the condition of the steps at the time and on the occasion in question constituted a concealed danger, such finding is not sufficient to impose liability on House. It is not sufficient because there was no evidence that House concealed the condition. Suppose, for instance, there was a hole in one of the steps, at the time House leased the building, which was in full sight, but that Penney had caused a rug to be cunningly placed over such hole so as to conceal it, and that one of its invitees had stepped through the concealed hole, and thereby been injured. This would have been a concealed danger. However, the condition of the stairs here complained of was certainly not one which was concealed, so far as the construction of the building was concerned. The "condition" was one prescribed by the architect and constructed by the builder, and it was as open to observation, the matter of lighting aside, as any other steps. In other words the condition of the steps, whether safe or dangerous, was, so far as the mat-

ter of construction was concerned, open to observation. The steps were constructed solidly and soundly, according to a plan devised by an architect whose competency is not challenged, which plan was duly approved by the proper City official as complying with City requirements. This was not the planning and setting of a dangerous trap. Traps are not thus planned and set. If there was proper and sufficient light so that one could clearly see the condition of the steps, the condition was a lighted and exposed condition. The proof showed that the store did not depend upon daylight for its lighting, but depended entirely upon artificial lighting, running its lights full blast at all times it was open. The jury found that the steps were inadequately lighted, and that this inadequate lighting was a proximate cause of Mrs. Mohr's injuries. In other words, though the jury found in effect that the steps were dangerous, we see that they were not constructed so as to conceal the danger, but were constructed so their condition was open to observation. The only support in the evidence for the finding that the danger was concealed lies in the inadequate lighting. For inadequate lighting of the store, the operator of the store is responsible. Landlords do not ordinarily furnish lights in buildings leased for stores, and did not here.

 We have seen that the duty of the owner of a building in providing for its safe construction is satisfied by the use of ordinary care to engage a competent architect and builder. If, after engaging such architect and builder, he did not follow the plan and accept the construction, unless it were shown him there were faults in the plan and construction, then such owner's situation would be exactly as though he had himself fathered the planning and building. The finding by the jury that the steps did not provide reasonably safe footing for the foot of the ordinary person is not, therefore, sufficient under the facts of this case to predicate liability of House therefor. The proof is that House did not father the planning and construction of the steps. -

In the lease, House covenanted that the premises and improvements would, at the commencement of the term of the lease, and during its entire term, conform to the laws, ordinances, rules and regulations of all constituted authorities and be in a suitable condition for conducting a retail store. He covenanted that he would "comply with all Federal, State, County, and City laws and ordinances * * * present and future, affecting the demised premises, at landlord's expense. * * *" The lease provides that the tenant may perform the unperformed covenants of the landlord in these words:

"That if landlord shall fail to perform any of the affirmative covenants to be performed by landlord under the terms and conditions of this lease, then the Tenant shall notify the landlord in writing of such failure, setting out with particularity the matters and things in which it claims the landlord has failed to perform, and the landlord shall thereupon be given reasonable time thereafter within which to perform and should he fail to do so, then the tenant may at its option perform such covenant as the landlord's agent and the full amount of the cost and expense thereby entailed shall be immediately owing by the landlord to the tenant and the tenant shall have the right to deduct such amount, together with interest thereon at the legal rate, out of the rental then owing, or thereafter due thereunder".

The lease further provides, in a paragraph headed "Alterations", as follows: "The tenant shall have the right and privilege at all times during the continuance of this lease to make, at its own expense, such changes, improvements, alterations and additions to the demised premises, as the tenant may desire; provided, however, that no structural changes shall be made in said building, or in the walls, roof or foundation of said building without first obtaining the written consent of the landlord, and any changes, improvements, alterations and/or additions that may be made without having obtained the written approval of the landlord shall at the expiration of this lease, or its termination from any cause, be immediately replaced by the tenant, and said building shall be put in the condition as it was before such change, improvements, alterations and/or additions were made, if required so to do by the landlord, otherwise such changes, improvements, alterations and/or additions shall become the property of the landlord and shall be considered a part of the demised premises."

 These provisions taken together have the effect of making it the duty of the landlord to perform the covenants which are specified, but carefully provide

the remedy which shall be applied if unperformed. Anyone who would claim the benefit of these provisions must take them subject to the burden and qualifications to which they are thus subjected. In other words, if the City chose to accept the stairway as conforming to the ordinances, and the tenant chose to accept the stairway as conforming to the ordinances, we fail to see how an invitee of the tenant (coming in under the tenant's title) can claim there was no compliance. But even had the tenant claimed there was no compliance, he was empowered at the landlord's expense to bring about such compliance. It was the primary duty of the tenant to have the premises safe for his invitees. The effect of the provisions of the lease was to make the landlord chargeable for the cost of such compliance, and to limit his liability to such cost.

 The right of an invitee of a tenant to recover for injuries resulting from defects which the landlord had covenanted to repair, but had failed to repair, has been sustained with reference to defects which evidence disrepair, and related to conditions which the parties expressly recognized as defects and contemplated should be restored to an original sound condition. The general rule was that the tenant took the premises as they were. When the landlord covenanted to repair, an exception to the general rule was created, and he was thereby rendered liable. But if the covenant to repair be limited to making such repairs as the tenant shall demand be made, and the right given the tenant to make the repairs, if the landlord declines to make them, and to pay for them at the expense of the landlord, then the duty of the tenant to repair is restored, except that he can deduct the cost of such repairs from his rent. By the same analogy of reasoning, the right and duty belonged to House to have the building comply with the ordinances, but if he was never informed of any failure to comply, and if he never declined to perform, he cannot by virtue of the terms of his lease be held liable. Had Penney claimed that the steps did not conform to the ordinances, and House declined to comply, then Penny could have complied, and charged the expense of such compliance against the rent. The right of an invitee suing upon such covenant, can be no higher than the right of the tenant.

This is, upon its facts, a case of the first impression. We have been cited no authority which extends the liability of a landlord to the extent here sought to be extended. To hold the owner of a building liable under these facts is to abolish the rule that he is obligated only to exercise ordinary care to select a competent architect and builder, as declared in White v. Green, supra, and makes him liable for their negligence.

No question is here made but that Mrs. Mohr was seriously injured. But the appellee in the due exercise of his judgment has seen fit, for the sum of $7,500, to release Penney, at whose invitation his wife was present in the store when she was injured. It was the unquestioned right of appellee to release the store operator whose liability to his invitees has long been well-settled, and undertake to recover also against the owner of the building. We have concluded, however, that he is mistaken in considering the owner of the building liable. The court should have instructed a verdict for House, and after verdict, should have granted the motion for judgment notwithstanding the verdict.

The judgment of the trial court is reversed and judgment is here rendered that plaintiff take nothing by his suit.

Reversed and rendered.

### On Motion for Rehearing.

 As stated in our original opinion, we held that House was not guilty of malfeasance. Whatever defect there was in the stairs, it was according to the plans of the architect. Now an architect follows an independent calling, as do doctors, lawyers or independent contractors. In Stephens County v. McCammon, Inc., 122 Tex. 148, 155, 52 S.W.2d 53, 55, in an answer to a certified question adopted by the Supreme Court, the status of an architect was likened to that of an attorney: "To illustrate, could it be seriously contended that, if a county desired the services of a skilled and competent attorney to represent the county in some important piece of litigation, involving a large sum of money, that the county should, before letting the contract, submit it to competitive bids, and then be required to hire the person making the lowest bid therefor? * * * To do and perform the work for which appellee was employed [architectural work] required technical skill and experience of

a high degree." In the case of White v. Green, Tex.Civ.App., 82 S.W. 329, cited in our original opinion, it is said: "We take it the work of the architect in preparing plans and specifications was that of an independent contractor." In Burke v. Ireland, 166 N.Y. 305, 59 N.E. 914, 916, it is said: "But the architect was not the agent or servant of the owner. He was in the exercise of an independent calling, and held the same legal relations to the defendant that the builder did, and for the omissions of either in the execution of the plans personal negligence cannot be imputed to the defendant." See Moore v. Lee, 109 Tex. 391, 211 S.W. 214, 215, 4 A.L.R. 185, where it is held that a physician, in virtue of his calling, must follow his own judgment, and the court said, " * * * and he is truly an independent contractor."

If the stairs as constructed were a nuisance per se, the fact that they were constructed according to plans prepared by the architect would not relieve House from liability for damages resulting therefrom to persons lawfully on the premises, and we so held upon original hearing. But we held that the same were not a nuisance per se.

If the principle contended for by appellee in this case should be sanctioned, it would (to use the language of Burke v. Ireland, supra) "be very difficult, if not impossible, for any owner of land in a great city to use it for building purposes without subjecting his entire estate to such enormous hazards as would virtually amount to a prohibition of such use."

The motion is overruled.

Overruled.