George M. ROSS, Appellant,

v.

Dr. Malcolm F. SHER et al., Appellees.

No. 633.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

July 5, 1972.

Rehearing Denied Aug. 2, 1972.

John H. Holloway, Houston, for appellant.

Frank B. Davis, Andrews, Kurth, Campbell & Jones, Sandra K. Foster, W. N. Arnold, Jr., Fulbright, Crooker & Jaworski, Houston, for appellees.

SAM D. JOHNSON, Justice.

This is a medical malpractice suit brought by George M. Ross, appellant, against two physicians, Dr. Malcolm Sher and Dr. M. F. Gottlieb. At the close of evidence, the trial court granted a motion for instructed verdict as to Dr. Gottlieb. Special Issues were submitted to the jury as to Dr. Sher. The jury's findings on both negligence and damages were favorable to Dr. Sher. Based on the jury's findings the trial court rendered a take-nothing judgment against the plaintiff, Ross. The instant appeal is therefore from an instructed verdict as to one defendant, Dr. Gottlieb, and a take-nothing judgment based upon a jury's verdict as to the other defendant, Dr. Sher.

The plaintiff Ross had trouble with his perirectal tissues since he received a gunshot wound in that area in 1933. In 1940, he was operated on for a fistula and had recurrent difficulties. In August of 1964, Ross went to Dr. Gottlieb, a general practitioner, who hospitalized the plaintiff for a rectal abscess and incised and drained the perirectal area. Dr. Gottlieb determined that the patient suffered from a rectal fistula and referred him to Dr. Sher, a general surgeon. Dr. Sher also diagnosed the underlying cause of much of Ross's problem as a fistula. As used here a fistula is a medical term for an abnormal passage or tunnel which starts in the colon and comes out the skin or body surface. Treatment or repair of a fistula is made by inserting a small wire through the tunnel until it comes within the colon.

The wire serves as a guide to the surgeon who attempts to repair the fistula by excising the infected tissue and converting the tunnel or passage into a trough. The trough is then expected to heal and close in from the bottom or interior.

Dr. Sher performed a fistulectomy on the plaintiff on September 8, 1964. Plaintiff contends that the operation brought on incontinence, an inability to control bowel movement. It was plaintiff's contention in the trial court that the incontinence was occasioned by Dr. Sher's negligently severing the sphincter and levator muscles in the process of the operation. These are muscles by which bowel movement is controlled.

Following the operation Dr. Sher followed the plaintiff in the hospital to September 17, 1964, and at the time he saw him last the wounds seemed to be healing. Ross was discharged from the hospital and Dr. Gottlieb followed him for some time thereafter. It was after the hospitalization that the plaintiff developed incontinence. In December of 1964, he was operated on by a Dr. Melton in an effort to cure the incontinence. He regained continence for an abbreviated period of time but the surgery was unsuccessful because the patient developed a myocin diarrhea, causing the surgery to break down. Later a colostomy was performed to allow optimum conditions for another attempted repair of the muscles.

The trial court submitted twelve Special Issues to the jury. Special Issue No. 1 was an informed consent issue. It asked if Dr. Sher failed to make a reasonable disclosure of the nature and extent of the contemplated surgical procedure, to which the jury answered "we do not". Predicated Special Issue No. 2 was appropriately not answered. Special Issue No. 3 asked if Dr. Sher incised the plaintiff's sphincter muscles, to which the jury answered "we do". Predicated Special Issue No. 4, the negligence issue, asked if Dr. Sher failed to exercise proper care and skill in so doing, to which the jury answered "we do not". Predicated Special Issue No. 5 was appro-

priately not answered. Special Issue No. 6 asked if Dr. Sher incised the plaintiff's levator muscle, to which the jury answered "we do". Predicated Special Issue No. 7, the negligence issue, asked if Dr. Sher failed to exercise proper care and skill in so doing, to which the jury answered "we do not". Predicated Special Issue No. 8 was appropriately not answered. Special Issue No. 9 asked if Dr. Sher, in performing the fistulectomy in one procedure instead of multiple procedures, failed to exercise proper care, to which the jury answered "we do not". Predicated Special Issue No. 10 was appropriately not answered. Special Issues No. 11 and No. 12 asked the expenses incurred for necessary medical care, and the sum necessary to compensate plaintiff for physical pain, mental anguish and loss of earnings. Both of these issues were answered "none".

■ Appellant urges fourteen points of error. The first nine of such points assert that the jury responses recounted above are supported by "no evidence" or "insufficient evidence", or that they are "against the overwhelming great weight and preponderance of the evidence". An examination of the issues reveals that Special Issue No. 1, the informed consent issue, is factual in nature. It is one on which the plaintiff had the burden of securing a favorable finding and failed to do so. In Special Issues No. 3 and No. 6 the jury found that the sphincter muscles and levator muscle were incised. In Special Issues Nos. 4 and 7, however, the jury failed to find that such action was negligence. Plaintiff again had the burden of securing a favorable finding and failed to do so. In Special Issue No. 9 the jury answered "we do not" to the question inquiring whether proper care was used by Dr. Sher in performing the operation in one procedure, rather than multiple procedures. Once again the plaintiff had the burden of securing a favorable finding and failed to do so. It is to be observed that in each instance the plaintiff is confronted with his failure to obtain an affirmative response on issues wherein the burden is clearly upon him to do so. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.Sup.1966). The jury was not, in any instance, persuaded by a preponderance of the evidence.

"In situations such as this where a jury returns a negative answer to an issue upon which the proponent has the burden of proof, the jury's negative answer need not be supported by affirmative evidence. Therefore, it avails the complaining party nothing to assert that a negative answer is without support in the evidence or is not supported by factually sufficient evidence. Under these circumstances, the complaining party is placed in the position of having to contend that the evidence establishes an injury as a matter of law. See Calvert, 'No Evidence' and 'Insufficient Evidence' Points of Error, 38 Texas Law Review, 361, 363, (1960)." Smith v. Safeway Stores, Inc., 433 S.W.2d 217, 218 (Tex.Civ.App. —Tyler 1968, writ ref'd n. r. e.). Appellant's no evidence points of error are overruled.

■ Appellant's other points of error nevertheless require a review of all the evidence in the record. Such review is made to determine whether an affirmative response to any of the enumerated Special Issues (1, 4, 7 or 9) was established as a matter of law or whether the jury's negative answer is so against the greater weight and preponderance of the evidence as to be manifestly wrong. We do not so conclude.

Other than what has been heretofore recited, the record reveals that in 1933 the plaintiff was shot twice during a robbery, one bullet exiting just below his tailbone. In 1940, he was admitted to the hospital, after a fall, for drainage of a bad bruise some three or four inches from his tailbone and during this time he was operated on for a fistula. In 1961, he was admitted to the hospital for something similar to a heart attack. In addition to the foregoing the plaintiff had emphysema, which was responsible for postponing the 1966 closure

of his colostomy, necessitated by the incontinence. The closure had not, at trial, been rescheduled.

■ On the consent issue plaintiff had the "burden to prove by expert medical evidence what a reasonable medical practitioner of the same school and same or similar community under the same or similar circumstances would have disclosed to his patient about the risks incident to a proposed diagnosis or treatment, that the physician departed from that standard, causation, and damages." Wilson v. Scott, 412 S.W.2d 299, 302 (Tex.Sup.1967). Plaintiff's witness on this issue was a Dr. Melton who treated him subsequent to treatment by Dr. Gottlieb and operation by Dr. Sher. Dr. Melton was not completely informed as to the plaintiff's prior medical history. Dr. Melton attempted to repair the sphincter and levator muscles to help Ross regain continence by suturing these muscles together. Dr. Melton's operation was temporarily successful, but the antibiotics given at the hospital brought on myocin diarrhea and the repairs broke down. A colostomy was the end result. According to Ross's testimony, Dr. Melton informed plaintiff before that operation to the same extent or degree as had defendants, Dr. Gottlieb and Dr. Sher. Dr. Sher and Dr. Gottlieb both testified that they informed Ross that a fistulectomy was needed and that this requires the removal of all diseased tissues, that this would involve excising any diseased portion of the sphincter muscle and that in all probability it would heal well. Both stated that they did not like the negative approach to surgery and that while Ross's fistula was longer than average they felt that incontinence was only a possibility and a remote one at that.

Received into evidence was St. Joseph Hospital's "Authorization for Surgeon to Operate", signed by Ross in the hospital a few days prior to the operation by Dr. Sher. Ross testified that he could not recall anything being on this consent form, but he was not willing to state that it definitely was signed in blank. Dr. Sher stated that the hospital had no policy of signing blank consent forms upon admittance into the hospital and generally such authorization when signed is specific for the surgical procedure to follow.

We cannot conclude that the plaintiff sustained his burden on informed consent or that, as a matter of law, Dr. Sher or Dr. Gottlieb diverged from that standard of informed consent practiced in the community.

We next consider plaintiff's contentions of negligence on the part of Dr. Sher, applying again the community standard concept. The record shows that the jury was confronted with a plaintiff who had a history of poor health and rectal problems and, in this instance, an unusually long fistula. Dr. Melton testified that Dr. Sher did not, in his opinion, comport with accepted medical procedure; that due to the length of the fistula a two step operation should have been undertaken. Further, it is a matter of general medical knowledge that an incising of the sphincter and the levator muscles, no matter how thinly, results in incontinence.

The counter of this was produced by the testimony of Dr. Sher and Dr. Gottlieb and the hospital records. The tissue involved was quite fibrotic, which means scar tissue. Generally, the different tissues or muscles can be readily identified, but in Ross's case with the accumulated scar tissue involved, the tissues ran together and there was no recognizable line between them—all muscle layers and tissues being replaced by scars. Dr. Sher could not tell if the levator muscle was or was not within that scar mass. The pathology specimen showed mostly scar tissue and very little muscle. Dr. Sher did excise the diseased tissues, staying as close as possible to the probe—a recognized procedure—and expected the trough to fill in or scar in and heal from the bottom welding the muscles back together. This procedure had been successful for him on numerous occasions. It was the opinion of both Dr. Sher and Dr. Gottlieb that the operation should not be in two stages,

especially considering the continued poor health of Mr. Ross.

Further, the hospital records indicated that Ross had bowel control during his stay at the hospital and Ross testified that he had some control, but "couldn't close up tight" (contrary to Dr. Melton's contention that upon the cutting of these muscles there would be no control). Dr. Gottlieb saw Ross on September 28, and October 15, 1964, for cases of extreme constipation. On the 15th an enema was given to relieve Ross. An incontinent person is unable to successfully have administered an enema—at least a pint of water must be held. Ross was able to hold the water and the enema was successful.

From the foregoing abbreviated review of the evidence we cannot conclude that the plaintiff sustained his burden on any one of the negligence issues or that, as a matter of law, negligence is to be imputed to either defendant.

■■ We next consider appellant's contentions relative to the damage issues (No. 11 and No. 12) wherein the jury answered "none" in both instances. Appellant contends that as a matter of law the undisputed evidence established that medical expenses and general damages resulted from the surgery and that the jury's "refusal to find damages is contrary to the overwhelming great weight and preponderance of the evidence as to be manifestly wrong and unjust." Appellant contends that such findings are indicative of prejudice on the part of the jury in its attempt to exonerate Dr. Sher. Upon review of the evidence we cannot say that plaintiff's showing or evidence on the damage issues preponderates clearly against the jury's answer. Besides, the jury found that the muscle incisions by Dr. Sher were not negligent. Thus, plaintiff would not be entitled to any monetary recovery and error, if any, is harmless. Tex.R.Civ.P. 434. The case relied upon by appellant for a showing of prejudice is Qualls v. Miller, 414 S.W.2d 746 (Tex. Civ.App.—Texarkana 1967, writ dism'd)

where plaintiff appealed from the damage portion of a judgment in his favor granting recovery of $1,200.00 upon a jury finding. The jury found the defendant's negligence to have proximately caused injury to the neck and back of plaintiff, an electrician and welder, causing permanent elevation of his blood pressure, preventing him from assuming the stooping position and causing substantial medical and drug bills, with the prospect of substantial future bills. In the instant case, not only was there evidence of rectal problems for an extended period of years and overall poor health, but it was also established that plaintiff's discontinuation of work was due to the condition of his chest and lungs, not the rectal problems and associated colostomy. Further to distinguish this from the Qualls case, there is no finding here of any negligence on the part of Dr. Sher proximately bringing about the condition. The evidence supports such failure to find. Appellant's point of error is overruled.

■ Appellant asserts error in the instruction of a verdict in favor of Dr. Gottlieb, alleging that a fact issue was raised as to his negligence, and as to informed consent. The latter issue has been disposed of earlier, but further, Dr. Gottlieb did not participate in the surgery. There being no duty imposed on Dr. Gottlieb in this instance, there can be no fact question on informed consent. Dr. Gottlieb was clearly shown to be the referring doctor and as such can not be liable for the negligence of that other doctor unless the evidence shows that he failed to exercise reasonable care in recommending the second physician. Moore v. Lee, 109 Tex. 391, 211 S.W. 214 (1919); Floyd v. Michie, 11 S.W. 2d 657 (Tex.Civ.App.—Austin 1928, no writ). No evidence was introduced by appellant on this point. No fact issue being raised, the granting of Dr. Gottlieb's motion for instructed verdict was proper.

Appellant's points of error, including those not discussed above, have been considered and each is overruled. The judgment of the trial court is affirmed.