John Benton GAYLE et al., Appellants,

v.

Loma DIXON et al., Appellees.

No. 17344.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 24, 1979.

Rehearing Denied June 21, 1979.

Ramey, Flock, Hutchins, Jeffus, McClendon & Crawford, Mike Hatchell, Tyler, for appellants.

Perkins, Dreyer & Rather, Denver E. Perkins, Gonzales, for appellees.

DOYLE, Justice.

John Benton Gayle, et al., (contestants) appeal from a judgment admitting to probate the 1975 will, and two codicils thereto, of B. D. Fussell (testator).

The case was transferred from the county court to district court, where it was tried to a jury on the issues of testamentary capacity and undue influence. All issues relative to the 1975 will and the accompanying codicils were answered favorably to Loma Dixon, et al. (proponents). Upon such verdict, judgment was rendered and the contestants have perfected this appeal.

Proponents are one of the daughters of testator and her family. The contestants are the other daughter of testator and her family, but this daughter, Doris Gayle and her husband, took a non-suit during trial, with their children remaining as contestants. Testator was divorced and his ex-wife was not a party to the law suit.

Testator executed a will in 1971 leaving his entire estate to his grandchildren by both daughters. However, he executed a subsequent will in 1975 revoking all prior wills and leaving his entire estate to proponents. He left nothing to the contestants, stating: "I am not devising any of my estate to my daughter, Mrs. Doris Gayle nor any of my estate to her children. This is not an oversight on my part. I have loaned money to Mr. and Mrs. Gayle and have also advanced money to their son, John Benton Gayle. I am of the opinion I have done enough in their behalf." Two codicils to the will were executed, directing the proportionate sharing of estate taxes and debts and amending the prior will to the extent of leaving an 80 acre tract of land to Mary Samora (also known as Mary Rivera) on the condition she provide room, board and laundry for the testator during his lifetime. It was this 1975 will and subsequent codicils that the court admitted to probate.

The contestants' theory, principally, was that since an automobile accident in 1963, the testator was "not of sound mind or memory or in any respect capable of mak-

ing a will or codicil." Further, they alleged the testator was unduly influenced by the proponents, Mary Samora and Hollis Massey, the testator's attorney.

The first of contestants' four points of error complains of the trial court's refusal to submit contestants' requested issues and instructions so as to include in the definition of "sound mind", the phrase " . . . . he must have memory sufficient to collect in his mind the elements of the business to be transacted and to hold them long enough to perceive at least their obvious relation to each other, and to be able to form a reasonable judgment as to them. . . . ," because under the facts of this case, said phrase constituted an essential element of "sound mind".

The issue posed by this point is whether it is error, in a will contest where testamentary capacity is in issue, to refuse to give the 'long form' definition of 'unsound mind' in favor of the 'short form' definition of the term. The short form definition requires jury findings as to the following elements of testamentary capacity:

(1) sufficient ability by the testator to understand the business in which he is engaged;

(2) sufficient ability by the testator to understand the effect of his act in making the will;

(3) the capacity of the testator to know the objects of his bounty; and

(4) the capacity of the testator to understand the general nature and extent of his property.

*Morris v. Morris,* 279 S.W. 806 (Tex.Com. App.1927, holding approved).

The long form definition would require a finding by the jury as to a fifth element of testamentary capacity, that being whether the testator had "memory sufficient to collect in his mind the elements of the business to be transacted, and to hold them long enough to perceive, at least their obvious relation to each other, and to be able to form a reasonable judgment as to them." *Prather v. McClelland,* 76 Tex. 574, 13 S.W. 543 (1890).

■ Contestants contend that as there was evidence in the record as to the testator's inability to coordinate and rationally consider business transactions, the long form definition of unsound mind which would include the additional memory-judgment-perception element should have been utilized and it was error to exclude the same. We do not agree with this contention and overrule the point of error. The basis for contestants' argument is the suggestion by Professor Atkinson that the utilization of the short form definition occurs in those cases where this fifth element is not in controversy. Atkinson, Atkinson or Wills § 51 (2d ed.) p. 237. See also, Bailey, Texas Law of Wills § 172 (1968) p. 280, and Texas Estate Administration § 4.27 (1975). A review of the cases reveals no mandatory rule as to the utilization of either definition.

The evidence which contestants assert supports submission of an inquiry as to testator's memory-perceptive-judgment capacity is testimony of a banker that in his opinion the testator could not transact business in a rational businesslike way and that the testator "had his mind on horses a whole lot", . . . . "and we felt he was quite senile."; and the testimony of the excluded daughter, Doris Gayle, who stated that at times the testator would blackout and be speechless; that he drank excessively and his memory "was gone". None of this testimony was in reference to testator's behavior on the day of the execution of the will or codicils, and nothing is in the record which would be indicative of the testator's inability on the dates of execution, to possess a memory sufficient to collect in his mind the elements of the business to be transacted (executing the will, the effect of making the will, the natural objects of his bounty, and the general nature and extent of his property) and to hold them long enough to perceive their obvious relation to each other and form a reasonable judgment as to them. Even accepting the contestants' assertion that the evidence is supportive so that the court should have allowed inquiry into the additional element of the definition of "unsound mind", it cannot be said that such error, if any, was calculated

to cause and probably did cause the rendition of an improper judgment. Rules 434 and 503, T.R.C.P. *Texas Employers Ins. Ass'n v. McKay*, 146 Tex. 569, 210 S.W.2d 147 at p. 148 (Tex.1948).

■ Contestants, by their second point of error, argue that the trial court should not have admitted the testimony of Ira Fussell relative to her loan transaction with John and Doris Gayle over contestants' objection, since such testimony was hearsay and tended to materially prejudice contestants' case. We find no merit in this contention.

By way of deposition, proponents of the will elicited testimony from the testator's ex-wife, Ira Fussell, as to the divorce settlement between her and the testator and the subsequent loan by the ex-wife out of the proceeds of the settlement to Mr. and Mrs. Gayle. The loan was never repaid. Contestants assert it was error for the trial court to admit the testimony as it was properly objected to as hearsay.

■ Hearsay is a statement made out of court when such evidence is offered for the purpose of proving the truth of such statement. McCormick, Texas Law of Evidence, § 781, p. 559. Mrs. Fussell (ex-wife) was testifying to her divorce settlement and her loan to Mr. and Mrs. Gayle. These were transactions in which she was a participant and her knowledge was first hand. Testimony of this nature is not hearsay.

Further, where there is evidence of an unnatural disposition of property by a testator it may be considered as a circumstance in determining whether or not the will was a product of undue influence, *Long v. Long*, 133 Tex. 96, 125 S.W.2d 1034 (1939), and "it is only where all reasonable explanation in affection for the devise is lacking that the trier of facts may take this circumstance as a badge of disorder or lapsed mentality or its subjugation." *Rothermel v. Duncan*, 369 S.W.2d 917 (Tex.1963). "In ascertaining whether undue influence exists or has been exerted, it is important to ascertain the mental condition of the party subjected to the influence. Acts occurring before or after or at the time of the execution of the instrument tending to throw light upon the mental condition of the party, are admissible." *Michon v. Ayalla*, 84 Tex. 685, 19 S.W. 878 (1892). In the instant case, testator left nothing in his will to one of his children. The will was in evidence and absent evidence explaining this unnatural disposition, it could constitute evidence of undue influence. The testator knew about the loans to John and Doris Gayle and "got mad" when he learned of their nonpayment. Admission of the testimony as to these loans by testator's ex-wife was proper to aid the jury in ascertaining the testator's mental condition.

Contestants further complain by point of error No. 3 that the trial court should not have excluded the exhibit of a letter from L. D. Campbell to Hollis Massey, which letter, contestants allege, contained material favorable to their issues of lack of "testamentary capacity" and "undue influence", and that the exclusion was certainly error in view of the fact that it had been qualified and admitted as a business record under Article 3737e, Tex.Rev.Civ.Stat.1925.

Contestants tendered into evidence records of the Houston Agricultural Credit Association pertinent to that organization's business dealings and loans to testator after properly qualifying the same under Art. 3737e. The records were admitted in bulk and no objections were made at that time. Later in the trial, when contestants sought to read into evidence one letter from the said records, proponents objected on the grounds that it contained "double hearsay". The court acknowledged that the instrument had previously been admitted into evidence, but withdrew the admission on motion of proponents and sustained the hearsay objections to the evidence. We think such withdrawal was proper under the facts of the case before us.

In the case of *Railway Co. v. Lamothe*, 76 Tex. 219, 13 S.W. 194 (1890), the Texas Supreme Court set out guidelines for allowing a withdrawal of already admitted evidence. The Court said:

"Objections not made to the introduction of evidence when it is offered, but afterwards, in the form of a motion to

exclude it generally, deserve a less favorable consideration than when made at the time. Usually, some reason for the delay in urging the objection ought to be made to appear, and the decision upon such objections ought to be left more to the discretion of the trial courts than when the objections are interposed at the proper time." (p. 195)

No reason was given for the delay in making objection and it was held that the court's refusal to withdraw was a proper exercise of discretion.

■ It is within the discretion of the trial court to allow the withdrawal of evidence already admitted in evidence. *McLain v. Sitton*, 374 S.W.2d 945, 142 Tex. 36 (Tex. Civ.App.—Beaumont 1964, no writ) and *Collins v. Smith*, 142 Tex. 36, 175 S.W.2d 407 at 408 (1943). "If the Judge, after receiving and permitting the evidence to go to the jury, had become convinced that it was not legal evidence, there is no impropriety in his correcting his own error, and excluding it from the jury." *Gaines v. Salmon*, 16 Tex. 311, at p. 313 (1856).

■ It would serve no useful purpose to set out the lengthy letter verbatim. Suffice it to say that the witness, L. D. Campbell, who wrote the letter to Hollis Massey, testified by deposition to every favorable inference that contestants argue was contained in such letter. Further, every theory espoused by contestants and supported by the contents of the letter, found support in the testimony of other witnesses called by contestants and by admitted evidence in other forms. Thus, even if there were error, such was rendered harmless. It cannot be said that the exclusion of this letter was calculated to cause and probably did cause the rendition of an improper judgment and no reversal can be based on this point of error. Tex.R.Civ.P. 434, 503.

■ The fourth point of error submitted by contestants complains of the trial court's failure to declare a mistrial following proponents' attorney's commenting upon contestants' failure to call certain witnesses who were disqualified by Article 3716, T.R. C.S.1925, commonly known as the Dead Man's Statute. We overrule this point.

Since the advent of Rule 182a, T.R.C.P., trial courts have been permitted to instruct the jury on the terms and effects of the Dead Man's Statute. From the cases cited by contestants in their excellent brief and examined by this court, and especially those under Rules 434 and 503, T.R.C.P., only in cases where the improper argument or comment concerning a disqualified witness' failure to testify, probably caused an improper verdict to be rendered, have the courts ordered reversals. In *Lumbermen's Lloyds v. Loper*, 153 Tex. 404, 269 S.W.2d 367 (1954), our supreme court, after concluding that the argument of counsel for the prevailing party was not proper, and could not ordinarily be cured by instruction from the bench, affirmed the judgment of the trial court and stated that:

"...  we think that in argument cases we may properly reason, as we do in this case, that since the evidence so preponderated in favor of the finding that the alleged accident did not occur, and since the worst of the offending argument had no direct reference to that specific matter, the argument probably did not cause the verdict and judgment to be as they were. ...  We believe that any fair jury would have reached the same verdict regardless of the argument . . . . ."

The comment in the case before us was concerned with the failure of the contestants to call Mary Samora, the Dixons, their children or one Leland Campbell to testify as to whether the testator was of unsound mind or unduly influenced. By deposition, Leland Campbell had in fact testified. The Dixons and their children being proponents, and Mary Samora, being a devisee under the subject will, would not have been expected to aid contestants if they had testified.

In view of the trial court's sustaining contestants' objections to the comments, instructing the jury under Rule 182a and the evidence of the entire case, we hold that such comments were not harmful to the extent that they caused the rendition of an

improper verdict. *Windom v. Windom,* 422 S.W.2d 611 (Tex.Civ.App.—Houston [1st Dist.] 1967 no writ); *Folse v. Monroe,* 190 S.W.2d 604 (Tex.Civ.App.—Beaumont 1945, writ ref'd w. o. m.); *Fox v. Lewis,* 344 S.W.2d 731 (Tex.Civ.App.—Austin 1961, writ ref'd n. r. e.).

The judgment of the trial court is affirmed.