Leon WILSON, Appellant,

v.

ESTATE OF Asie Lee WILSON, Deceased, Appellee.

No. 19838.

Court of Civil Appeals of Texas, Dallas.

Dec. 31, 1979.

Rehearing Denied Jan. 30, 1980.

---

8. Williams raises no appellate contention that his actions resulted from an accidental and bona fide error.

Hugh O. Mussina, Dallas, for appellant.

Noel C. Ice, S. G. Johndroe, III, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, for appellee.

Before GUITTARD, C. J., and ROBERTSON and CARVER, JJ.

ROBERTSON, Justice.

This is an appeal from a probate court's order denying an application to probate a holographic will. The application was denied on the basis of jury findings of lack of testamentary capacity and undue influence. On original submission, we reversed and remanded for a new trial holding that the admission into evidence of a prior judgment, which recited a finding of undue influence in a suit to cancel a deed from the testatrix to appellant, constituted harmful error. *Wilson v. Estate of Wilson*, 581 S.W.2d 729 (Tex.Civ.App.—Dallas 1979). The supreme court disagreed with that holding and reversed our decision, remanding the case to us for consideration of the other points raised by appellant. *Estate of Wilson v. Wilson*, 587 S.W.2d 674 (Tex. 1979). Since we sustain appellant's points of error challenging the jury's findings of lack of testamentary capacity and undue influence, we reverse the trial court's judgment and remand for a new trial.

We first address appellant's points of error that challenge the jury's finding that the testatrix did not have testamentary capacity at the time this will was executed. In Texas the proponents of the admission of a will to probate have the burden to establish that all requisites to execution of the will have been complied with. *Seigler v. Seigler*, 391 S.W.2d 403, 404 (Tex. 1965) (per curiam); *Cravens v. Chick*, 524 S.W.2d 425, 427 (Tex.Civ.App.—Fort Worth), *writ ref'd n. r. e. per curiam*, 531 S.W.2d 319 (Tex.1975). One of those requisites is that the testatrix have testamentary capacity at the time the will is executed. *Chambers v. Chambers*, 542 S.W.2d 901, 906 (Tex.Civ.App.—Dallas 1976, no writ); *Green v. Goans*, 458 S.W.2d 705, 708 (Tex. Civ.App.—El Paso), *writ ref'd n. r. e. per curiam*, 464 S.W.2d 104 (Tex.1970). Proof of testamentary capacity requires a showing that the testatrix, at the time the will was executed, had sufficient ability to understand 1) the business upon which she was engaged, 2) the effects of making the will, and 3) the nature and the extent of her property. She must also 4) have known who was dependent upon her bounty and their claims upon her, and 5) have had memory sufficient to collect in her mind the elements of the business to be transacted and to retain them long enough to form a reasonable judgment. *E. g., Prather v. McClelland*, 76 Tex. 574, 584–86, 13 S.W. 543, 546 (1890); *Gayle v. Dickson*, 583 S.W.2d 648, 650 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n. r. e.); *Chambers v. Chambers*, 542 S.W.2d at 906. While the jury must be able to find support in the evidence for each of these elements, witnesses need not specifically recite the wording as set out in each element.

The jury found that testatrix did not possess testamentary capacity on April 1, 1972, when she executed the purported will. Appellant contends that the trial court should have disregarded this answer because it was against the great weight and preponderance of the evidence, or because it was contrary to all the evidence and was unsupported by any evidence. The portion of appellant's point of error contending that this finding is unsupported by any evidence is inappropriate here because appellant had the burden of proof. When the burden is on appellant to establish the existence of a fact by the preponderance of the evidence, there need be no evidence in support of its nonexistence to support a negative finding. *See Ross v. Sher*, 483 S.W.2d 297, 299 (Tex. Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.). Nevertheless, appellant's points of error contending that the finding was against the great weight and preponderance of the evidence, or that it was contrary to all the evidence require a review of all the evidence. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973); *Ross v. Sher*, 483 S.W.2d at 299; Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361, 364–67 (1960).

Four witnesses testified as to the testatrix's mental capacity; two presented by appellant and two presented by appellee. Peggy Wilson, appellant's wife, testified that testatrix knew her natural heirs, knew her sons' names, knew the extent and com-

position of her estate, could take care of business affairs, and was of sound mind. Nancy Wilson, appellant's daughter, testified that testatrix knew her heirs, was of sound mind, carried on normal and coherent conversations, had "good mental capacity" * on March 29, 1972, and was in "good mental health" in August 1972. Appellee called as witnesses Mr. and Mrs. Weaver, a couple who were testatrix's former neighbors. Mrs. Weaver testified that testatrix was "not of unsound mind," that she was sane in 1970 and her "mental capacity" * did not change during the time Mrs. Weaver knew her, which included 1972, that she saw no evidence of mental failure, that testatrix knew her sons, and that she knew the extent of her property. Mr. Weaver's testimony was that he did not know what testatrix's mental state was at the time she executed the purported will.

■■■ Mr. Weaver's testimony amounted to no evidence as to testamentary capacity. Mrs. Weaver's testimony, however, was that of a disinterested party and clearly supported the contention that testatrix had testamentary capacity. While both Peggy Wilson's and Nancy Wilson's testimony could be classed as coming from an interested party because of their dependence on and relationship to appellant, it nonetheless was corroborative of Mrs. Weaver's testimony. Appellee contends that the jury finding of lack of testamentary capacity is supported by evidence showing that the testatrix was seventy-eight years old, had suffered some minor strokes, and was hospitalized with a broken hip at the time the purported will was executed. These factors, standing alone, however, are not sufficient to prove lack of testamentary capacity. *Burk v. Mata*, 529 S.W.2d 591, 594 (Tex.Civ.App.—San Antonio 1975, writ ref'd n. r. e.); *Nowlin v. Trottman*, 348 S.W.2d 169, 173 (Tex.Civ.App.—Amarillo 1961, writ ref'd n. r. e.). Appellee also contends that an application for guardian-

ship filed by appellant contained the statement that testatrix was of unsound mind. Such a statement, however, is hearsay and thus constitutes no evidence of decedent's mental condition. *E. g., Red Henry Painting Co. v. Bank of North Texas*, 521 S.W.2d 339, 343 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Wood v. Self*, 362 S.W.2d 188, 190 (Tex.Civ.App.—Dallas 1962, no writ); 1 C. McCormick & R. Ray, Texas Law of Evidence § 792 (Texas Practice 2d ed. Supp.1972). None of this evidence contradicts the testimony of appellant's two witnesses and of appellee's own witness that testatrix was of sound mind. Considering all of the testimony, we must conclude that the testatrix's testamentary capacity as of April 1, 1972, was established as a matter of law. The jury's finding to the contrary was erroneous and should have been disregarded by the trial court.

Since the jury's finding of undue influence would support the judgment despite our conclusion as to the finding of lack of testamentary capacity, we must now address appellant's points of error challenging the finding of undue influence. Appellant challenges the jury's finding of undue influence by both legal and factual sufficiency points of error. A prior will of testatrix dated July 9, 1970, provided appellant with only one dollar, "he having heretofore received due provision and consideration." The remainder of testatrix's estate was to pass to appellee. The April 1, 1972, will of decedent passed the estate to appellant and appellee, "share and share alike." Thus, the appellee had to persuade the jury by a preponderance of the evidence that this change was procured by undue influence exercised by appellant.

■■■ Each case of undue influence must be decided on its own facts; however, the elements necessary to establish undue influence are well settled. The contestant must prove: (1) the existence and exertion of an

---

* No objection was made to the form of these questions or answers, and no points of error have been raised on appeal. For purposes of this review we have viewed the answers as evaluations of testatrix's mental condition.

*See Carr v. Radkey*, 393 S.W.2d 806, 810 (Tex. 1965); *Spillman v. Estate of Spillman*, 587 S.W.2d 170, 172 (Tex.Civ.App.—Dallas 1979, no writ).

influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex.1963); *Reynolds v. Park*, 485 S.W.2d 807, 813 (Tex.Civ.App.—Amarillo 1972, writ ref'd n. r. e.); *Hamlin v. Bryant*, 399 S.W.2d 572, 582 (Tex.Civ.App.—Tyler 1966, writ ref'd n. r. e.). Some tangible and satisfactory evidence must be introduced to establish the existence of each of these elements. Undue influence, however, is often a subtle thing, sometimes evolving over an extended period of time. Thus, circumstantial, as well as direct, evidence is frequently necessary to prove its existence. *Rothermel v. Duncan*, 369 S.W.2d at 922.

In this case appellee sought to establish undue influence by showing that testatrix and appellant had a bad relationship extending over several years, that testatrix was physically weak and thus susceptible to influence, and that by filing an application for guardianship over testator, appellant had been able to force testatrix to write out a will contrary to her actual testamentary wishes. It is undisputed that appellant and testator quarrelled between May and October of 1970. Appellant's wife testified, however, that a normal mother-son relationship thereafter existed and that this was evidenced by the fact that appellant and his family visited testatrix once each week for at least the next two years. She also testified that testatrix had been hospitalized with a broken hip from January to April of 1972. After testatrix returned home from being hospitalized, appellant and his wife visited her every other day and did her grocery shopping.

The following documentary evidence was introduced:

October 1971 Letter from attorney to testatrix with deed of Dallas property from testatrix and appellee to appellant and instructions for execution of the deed, which remains unexecuted;

February 1972 Application of appellant for guardianship over testatrix;

April 1, 1972 Purported holographic will executed by testatrix;

May 1972 Appellant's motion to dismiss action under the February 1972 application for guardianship;

February 1973 Letter from testatrix to appellant and appellee indicating testatrix's testamentary intent, including intent to deed Dallas property to appellant;

May 1973 Deed of property in Motley and Floyd counties from testatrix to appellant;

June 1973 Affidavit by testatrix that appellant fraudulently induced her to execute May 1973 deed, that it was without consideration, and that that deed is void;

July 1973 Testatrix by next friend, appellee, brought action against appellant to set aside May 1973 deed;

November 1973 Letter from testatrix to appellant authorizing him to investigate unlawful use of testatrix's checking account;

January 1974 Accounting filed by appellee as defendant pursuant to order of court in suit brought by testatrix and appellant. Accounting listed any and all assets appellee had in his possession for testatrix;

January 1974 Appellant brought action against P. E. Fish and testatrix to recover funds from sale of property in Motley and Floyd counties, which was subject of May 1973 deed. [Court admitted this document solely to show a suit had been filed between the parties and as indicating complete harmony did not exist between them];

March 1974 Letter from testatrix to judge of probate court stating that testatrix was having trouble remembering past events and requesting that appellant be appointed her guardian;

February 1976 Judgment entered in July 1973 suit; judgment includes finding that appellant substituted his own will and desires for those of testatrix in

procuring the execution of the May 1973 deed;

September 1976 Accounting filed by appellee as defendant and trustee of the Asie Lee Wilson Trust in an action brought by testatrix and Wayne Shirley, guardian.

Appellant contends that these documents, particularly those after 1972, constitute no evidence of undue influence, and that the evidence does not establish the three elements required to prove undue influence. Appellee contends that the documents and testimony relating thereto show that testatrix and appellant argued many times after 1970, and thus appellant's wife's testimony that all was well between testatrix and appellant was untrue. Additionally, he contends that the documents from 1972, considered with the fact that testatrix was hospitalized from January through April of 1972, prove a scheme of undue influence by appellant over testatrix.

From the evidence introduced, the jury was justified in finding the existence and exertion of an influence throughout the time covered by the evidence. Testator was clearly subject to influence by outside sources. Not every influence, however, is undue influence. While the record before us may reflect some evidence from which undue influence could be inferred, we hold that it is factually insufficient to prove that appellant exercised undue influence over testatrix at the time she executed the April 1972 will. The evidence establishes that at various times testatrix disagreed with one or another of her sons sufficiently to file suits against them or to cause them to file suits against her. Nonetheless, there is no indication in this evidence that she normally and continually disliked appellant so much that she would have had to have been unduly influenced before she would make a will on April 1, 1972, dividing her estate equally between her two sons. Based on this evidence, the April 1, 1972, will is a natural disposition of decedent's property. See *Rothermel v. Duncan*, 369 S.W.2d at 923.

In *Rothermel* the court made the following statement:

[T]he circumstances relied on as establishing the elements of undue influence must be of a reasonably satisfactory and convincing character, and they must not be equally consistent with the absence of the exercise of such influence. This is so because a solemn testament executed under the formalities required by law by one mentally capable of executing it should not be set aside *upon a bare suspicion of wrongdoing*.

*Id.* at 922–23 (citations omitted) [Emphasis added]. The facts that an application for guardianship was filed and then dismissed after this will was executed are precisely such as come within this reasoning. Consequently, because we conclude that the evidence in this record is factually insufficient to support the jury finding of undue influence, we must reverse and remand for a new trial.

Since any errors in the admission of documents covered by appellant's remaining points of error are rendered harmless in light of our remand for a new trial, we do not address those points further. We adopt the language of our prior opinion in this case regarding the admission of appellee's exhibit no. 2. See *Wilson v. Estate of Wilson*, 581 S.W.2d at 731.

Accordingly, we reverse and remand for a new trial.