**Reuben VISAGE and Paul Lawson, Appellants,**

v.

**Lowell Raymond MARSHALL, Appellee.**

**No. 1447.**

Court of Appeals of Texas, Tyler.

April 22, 1982.

Rehearing Denied May 20, 1982.

Otto A. Ritter, Kerry N. Cammack, Longview, for appellants.

Frank Supercinski, Longview, for appellee.

SUMMERS, Chief Justice.

Our former opinion in this cause is withdrawn and the following substituted therefor.

Appellee Lowell Raymond Marshall (Marshall) sued appellants Reuben Visage and Paul Lawson (Visage and Lawson), individually and d/b/a a partnership, seeking a joint and several recovery in quantum meruit

for work, labor and materials furnished to and accepted by appellants in the construction of a group of duplexes on Bernice Street on the northwest side of Longview, in Gregg County, Texas, and damages for alleged fraud, conversion and breach of rental agreements in connection with such construction. Appellee also sued for funds alleged to be due him from the resale of a lot, formerly owned by one Ron Volkman, at the corner of Fairmont and Gilmer Road in Longview.[1]

Appellants answered with both a general denial and specific denials to the claims asserted by appellee, and alleged that appellee's work on the duplexes was part of a partnership agreement between the parties. In appellee's verified pleading, he denied the formation of a partnership.

The case was submitted to a jury which answered special issues in favor of Marshall. The trial court denied the appellants' motion for judgment non obstante veredicto and/or motion to disregard answers to special issues and, based upon the jury's findings, rendered judgment for Marshall. From this adverse judgment appellants have appealed.

We affirm.

Appellants bring forward two points of error. Both points are multifarious. *Rio Delta Land Co. v. Johnson*, 566 S.W.2d 710, 713 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.). However, in disposing of them we apply the liberal rule with reference to construction of points laid down in *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478, 482 (1943). In their first point, they assert:

The trial court erred in denying defendants' motion for judgment non obstante veredicto and in the alternative, motion to disregard answers to special issues for the reason that there was no evidence or there was insufficient evidence presented at the trial and reflected in the record for a finding that there was no partnership relationship by and among

Lowell Raymond Marshall, Reuben Visage and Paul Lawson, as all evidence of probative force and value was conclusively to the tenor and effect that there did in fact exist a partnership relationship between said parties.

Special Issue 1, with the jury's answer thereto, read as follows:

SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that a partnership was formed by and between Lowell Raymond Marshall, Reuben Visage and Paul Lawson on or about January 12, 1976?

In connection with the above special issue, you are instructed that a "partnership" is a contract or agreement, either oral or written, express or implied, entered into between two or more persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, and to divide the profits and bear the loss in certain proportions.

Answer "We do" or "We do not."

ANSWER: We do not.

This issue is one on which appellants had the burden of securing a favorable finding and failed to do so. The jury was not persuaded by a preponderance of the evidence. When, as here, a jury returns a negative answer to an issue upon which the proponent has the burden of proof, the jury's negative answer need not be supported by affirmative evidence. Therefore, it avails the complaining party nothing to assert that a negative answer is without support in the evidence. Under these circumstances, the complaining party is placed in the position of having to contend that the evidence establishes the issue as a matter of law. R. Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," 38 Texas L.Rev. 363 (1960); *Bell v. Buddies Super Market*, 516 S.W.2d 447, 451 (Tex.Civ. App.—Tyler 1974, writ ref'd n. r. e.); *Ross v. Sher*, 483 S.W.2d 297 (Tex.Civ.App.—

---

1. Prior to trial this suit was consolidated for purpose of trial with an action filed by appellants against appellee seeking an accounting in a partnership alleged to have existed between the parties.

Houston 1972, writ ref'd n. r. e.); *Smith v. Safeway Stores, Inc.,* 433 S.W.2d 217, 218 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.). Appellants' "no evidence" and "insufficient evidence" challenges in the first point (attacking the court's action in overruling their motions non obstante veredicto and to disregard certain jury findings) are considered as "no evidence" complaints and are overruled. See Calvert, supra at 362.

Appellants' other challenge in the first point requires a review of all the evidence in the record to determine whether an affirmative response to Special Issue 1 was established as a matter of law. We do not so conclude.

The record reflects that on or about January 12, 1976, Visage and Lawson approached Marshall regarding the construction of some duplexes on Bernice Street. At that time Marshall was employed by All-Tex Construction Company as project superintendent in building the Clusters Apartments in Longview. Appellants contend that the parties then formed a verbal partnership under the name of Rapar Construction Company for the building of such duplexes; that Visage and Lawson secured funding for the payment of labor, supplies and materials to be utilized by Marshall; that monies were on a regular and periodic basis transferred to an account or accounts for the benefit of Marshall, and to accounts of Rapar Construction Company, upon which Marshall drew checks for the payment of materials and laborers, as reasonably required in the construction of the duplexes.

Marshall denied that a partnership was formed and contended that he never entered into a partnership agreement with Visage and Lawson. He further contended that appellants hired him to coordinate and supervise the construction of the duplexes, that appellants agreed to bear all expenses to complete said duplexes and pay him for his services on a piece or contract basis for each duplex. The construction of several duplexes was commenced and continued until July of 1977, when a dispute arose apparently over Marshall's performance of his responsibilities and his claim that appellants were behind in paying him his draws. At that time eleven duplexes were finished and three others were under construction but not quite completed.

A review of all the evidence reveals a conflict in the evidence regarding whether a partnership was formed by Visage, Lawson and Marshall in January of 1976. Appellant Visage testified that an oral partnership was formed between the three parties in January 1976 under the name of Rapar Construction Company for the construction of duplexes on Bernice Street; that this relationship continued until a disagreement occurred on or about July 14, 1977; that Marshall was to receive an agreed supervision fee for supervising the construction of the duplexes and that the profits and losses were to be shared one third to each of the partners. The following four witnesses, each called by appellants, gave testimony relating to the partnership issue. Frank Peacock, a public accountant, testified that the three parties told him they "were going to form a partnership" for the construction of some duplexes; that they wanted him to be their accountant in this project and to go ahead and set up the necessary books for Rapar Construction Company. Brenda Scott, an employee for Moore Brothers Lumber Company, testified that, in opening an account for Rapar Construction Company, Marshall represented that he, Visage and Lawson were partners. Hulen R. Smith, a bricklayer on the Bernice Street project, testified that when, at Lawson's suggestion, he contacted Marshall as the one in charge about doing the brick work, Marshall said he was a partner with Visage and Lawson in building the duplexes. Renee Ogilvie, a bookkeeper hired by Visage to work jointly for Greggtex Asphalt and Rapar Construction Company, testified that during the first six or seven months of 1977, she heard the three parties talk about their partnership.

In contrast to the testimony of appellants' witnesses referred to above, there is evidence in the record refuting the formation or existence of a partnership between

the parties. Marshall testified that he did not ever enter into either an oral or written partnership agreement with Visage and Lawson on the Bernice Street project; that a partnership was discussed and he probably told some of the subcontractors he was a partner but that a partnership was never formed; that he would not go into any business without it being in writing; that there was also a discussion about forming a corporation but it likewise did not come through. He testified that appellants engaged him to coordinate and supervise the construction of the duplex project; that they assured him his work would be without interference from them; that it was understood that he would be in charge of buying materials, making sure the labor was paid and the buildings were completed, and that appellants would make payments to him as needed. He further testified he completed the Clusters Apartments for All-Tex Construction and took himself off their payroll June 1 or May 31, 1976; that in the meanwhile he had been going out in his spare time working on the first four duplexes and in that work used a lot of the subcontractors that had worked for him at the Clusters; that after finishing the Clusters he lived in several of the duplexes, paying rent charged by appellants for two months and later rent-free for managing some of the apartments for appellants as rental units; and that he was not paid anything for his work on the first four duplexes.

Marshall testified further as follows:

Q All right. Now, when you started going out there and doing work full time in June of '76, did you start doing business as Marshall Construction Company?

A Yes, I did.

Q Was that at the insistence and request of either Paul Lawson or Reuben Visage?

A That was at their request because they didn't want to have any involvement or, you know, income tax or withholding tax, insurance, and all that kind of stuff, and they just didn't want to be involved in it.

\* \* \* \* \* \*

A They were happy with what work I was doing and they wanted me to continue on, you know, so, I operated and did my work under Marshall Construction.

Q All right. And did they pay you a salary under Marshall Construction for your labor, for some of it?

A Well, I wouldn't call it a salary, what I call it—you know, in my business as a labor contractor, we call it, you know, it's piece work is what it is; you get so much a square foot and so much for each item is what you get.

\* \* \* \* \* \*

Q And was there a discussion about you receiving money that you were due to you as a contract laborer?

A Yes. This is what got us into a big argument.

Q All right. Were you behind on your draws?

A Yes, I was behind on draws; they were behind, whichever way you want to put it. I hadn't received it.

Q Now, when—at some time during these conversations, did they tell you that they weren't making any money?

A Yes, right down when the final countdown was begun, they said, "We don't have any money. We don't owe you any money. Get off my property."

During cross-examination appellant Visage testified in part as follows:

Q All right, sir. Now, it is true is it not, that you and Mr. Lawson took all the alleged loss on this Rapar Construction Company off of your individual tax returns?

A Yes, sir.

Q You didn't share all the losses, then, one-third, one-third, one-third?

A No, sir.

\* \* \* \* \* \*

Q You took allegedly, all of these losses off your income tax?

A No, sir, I took half of them.

Q All right. And Mr. Lawson took half?

A Yes, sir.

Frank Peacock, the accountant called by appellants, testified that an accountant in his office prepared an individual tax return for Ray Marshall as an individual, doing business as Marshall Construction Company for the year 1976, and that he (Peacock) reviewed and signed it. Mr. Peacock further testified that Marshall reported his 1976 income as coming from Ray Marshall Construction Company and as an employee of All-Tex, and not from a partnership.

Mrs. Billy D. Rogers, who rented an apartment in one of the Bernice Street duplexes, testified that she heard a conversation between the parties in which Visage and Lawson told Marshall "to get—and I prefer not to use the language that they said—off of their property."

■ It was the appellants' burden to prove by a preponderance of the evidence that a partnership was formed by and between Lowell Raymond Marshall, Reuben Visage and Paul Lawson on or about January 12, 1976. In reply to Special Issue 1, the jury answered in the negative "we do not." The jury as a trier of fact was in the best position to evaluate the testimony. It was for the jury, as the finder of facts, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve the conflicts and inconsistencies in the testimony. To this end, the jury was privileged to believe all or part or none of the testimony of any one witness. *Esteve Cotton Company v. Hancock*, 539 S.W.2d 145, 158 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). Having reviewed the entire record, it is our opinion that there is some evidence of probative force to support the jury's finding and that the appellants have not established, as a matter of law, the formation of a partnership between the parties on or about January 7, 1976. Appellants' first point is overruled.

■ In their second point of error appellants assert:

The trial court erred in denying defendants' motion for judgment non obstante veredicto and in the alternative, motion to disregard answers to special issues for the reason that in submitting special issue no. 1 and special issues nos. 7 and 7–A to the jury, as a result of the jury's responses thereto, there arose a clear and fatal conflict in the answers to such special issues with regard to the existence or the non-existence of a partnership relationship by and among Reuben Visage, Paul Lawson and Lowell Raymond Marshall.

Special Issues 7 and 7–A, with the jury's answer thereto, read as follows:

SPECIAL ISSUE NO. 7

From a preponderance of the evidence, do you find that the defendants refused to give Lowell Raymond Marshall his ⅓ of their ⅔ profits from the sale of a lot located at the corner of Fairmont Street and Gilmer Road, Longview, Texas, as they previously agreed with Ron Volkman?

Answer "We do" or "We do not."

ANSWER: We do.

If you have answered special issue no. 7 "We do," then answer special issue no. 7–A; otherwise, do not answer special issue No. 7–A.

SPECIAL ISSUE NO. 7–A

From a preponderance of the evidence, what sum of money, if any, is due and owing to Lowell Raymond Marshall because of Defendants' failure, if any, to give Lowell Raymond Marshall his ⅓ of their ⅔ of the profits from the sale of the lot located at the corner of Fairmont Street and Gilmer Road, Longview, Texas, as they previously agreed with Ron Volkman?

Answer in dollars and cents, if any.

ANSWER: $8,880.00

Appellants contend that there is an irreconcilable conflict between the jury's failure to find in answer to Special Issue 1 that a partnership was formed by the parties on or about January 12, 1976, and the jury's answers to Special Issues 7 and 7–A. We do not agree.

In *Bender v. Southern Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980), the Supreme Court laid down the following guidelines in testing jury findings for conflict:

In reviewing the jury findings for conflict, the threshold question is whether the findings are about the same material fact. *Pearson v. Doherty*, 143 Tex. 64, 183 S.W.2d 453, 455 (1944). A court may not strike down jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled. *Little Rock Mfg. Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 989 (1949). The court must 'reconcile apparent conflicts in the jury's findings' if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole. *Ford v. Carpenter*, 147 Tex. 447, 216 S.W.2d 558, 562 (1949). Where the issues submitted 'admit of more than one reasonable construction,' that which avoids a conflict in the answers is generally adopted. See *Merritt v. King*, 66 S.W.2d 464, 466 (Tex. Civ.App.—Texarkana 1933, writ ref'd). As we stated in *Producers Chemical Co. v. McKay*, 366 S.W.2d 220, 224 (Tex.1963), 'It is our duty to harmonize jury findings when possible.' We do not determine whether the findings may reasonably be viewed as conflicting; to the contrary, the question is whether there is any reasonably possible basis upon which they may be reconciled.

The record reflects that appellants bought a lot at or near the intersection of Fairmont and Gilmer Road in Longview from Ron Volkman for $50,000.00; that this lot was three or four miles distant from their Bernice Street property; that it was appellants' agreement with Volkman at the time of said purchase that if the property was sold for a profit, Volkman would receive one third of the profits and that the remaining two thirds would be divided between appellants and Marshall.

Issue 1 and Issues 7 and 7–A do not inquire about the same material fact. Issue 1 inquires about the formation of an alleged partnership between appellee and appellants on or about January 12, 1976, and Issues 7 and 7–A inquire about a separate agreement appellants made with Ron Volkman. Applying the principles of *Bender* to the findings and testimony herein, we find no conflict in the jury's answers to Issues 1, 7 and 7–A. Appellants' second point of error is overruled.

Appellee's brief contains a cross point which complains of an aspect of the judgment, namely, that the trial court, by disregarding the jury's findings to Special Issues 4 and 4–A, denied appellee a recovery of $1,237.36 with interest at the rate of 9% per annum from July 7, 1977.

This court will consider appellee's cross point even though appellee has not perfected an appeal. *Dallas Electric Supply Company v. Branum Company*, 143 Tex. 366, 185 S.W.2d 427, 430 (1945). However, to be entitled to appellate review of errors raised by a cross point, appellee must have apprised the trial court in some manner of its complaints or objections to the judgment. *West Texas Utilities Company v. Irvin*, 161 Tex. 5, 336 S.W.2d 609 (1960); *Texas Oil & Gas Corporation v. Vela*, 429 S.W.2d 866, 881 (Tex.1968); *White Stores Inc. v. Crain*, 515 S.W.2d 677, 678 (Tex.Civ. App.—Austin 1974, no writ). In the instant case, appellee did not except to the judgment, give notice of appeal therefrom, or in any manner give notice to the court of his dissatisfaction with the judgment. Accordingly, appellee's cross point is overruled.

The judgment of the trial court is affirmed.

MOORE, J., not sitting.